Britanus VIK, Appellant,

v.

COMMERCIAL FISHERIES ENTRY
COMMISSION, State of
Alaska, Appellee.

William FOWLER, Appellant,

v.

COMMERCIAL FISHERIES ENTRY
COMMISSION, State of
Alaska, Appellee.

Nos. 4588, 4629.

Supreme Court of Alaska.

Nov. 6, 1981.

Pamela Finley and J. P. Tangen, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellants.

Deborah Vogt, Asst. Atty. Gen., and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and COMPTON, JJ., and DIMOND,* Senior Justice.

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

## OPINION

RABINOWITZ, Chief Justice.

This case is a consolidated appeal from two superior court judgments affirming decisions by the Commercial Fisheries Entry Commission (CFEC)[1] refusing to consider late applications for limited entry permits. We find no merit to appellants' statutory construction or constitutional arguments and affirm.

## I. INTRODUCTION

To understand the legal setting of these challenges, some explication of the legislation and litigation background of Alaska's Limited Fisheries Entry Act (AS 16.43.-010–.380) is necessary.[2]

This statute was originally enacted in 1973, to meet the following concerns:

*Purpose and findings of fact.* (a) It is the purpose of this chapter to promote the conservation and the sustained yield management of Alaska's fishery resource and the economic health and stability of commercial fishing in Alaska by regulating and controlling entry into the commercial fisheries in the public interest and without unjust discrimination.

(b) The legislature finds that commercial fishing for fishery resources has reached levels of participation, on both a statewide and an area basis, that have impaired or threaten to impair the economic welfare of the fisheries of the state, the overall efficiency of the harvest, and the sustained yield management of the fishery resource.

AS 16.43.010. The essence of the statutory scheme is the requirement that anyone operating gear in the commercial taking of fishery resources must obtain an entry permit. AS 16.43.150. Such a permit is issued by the CFEC for one year, renewable annually. It survives the death of the holder, and limitations are placed on its alienability. AS 16.43.150–.170.

The CFEC is directed to designate certain "distressed fisheries," for which a maximum number of entry permits is set at the highest annual number of units for gear fished during the period 1969–1972. AS 16.43.240(a). Maximums may be set for additional fisheries, not initially designated as distressed, if participation levels for those fisheries become sufficiently high. AS 16.43.240(b).[3]

The most litigated aspect of the application process has been the statute's prior gear license requirement—*i. e.*, in order to be eligible to apply for an entry permit, an individual must have possessed a "gear license" under the former licensing statutes; *see* former AS 16.05.-540–.630, .640–.650, .670, repealed effective January 1, 1978, ch. 105, § 19, SLA 1977. The prior gear license requirement is discussed more fully below.

Applicants for entry permits are to be ranked according to the degree of hardship which they would suffer by exclusion from the fishery, based upon consideration of:

(1) degree of economic dependence upon the fishery, including but not limited to percentage of income derived from the fishery, reliance on alternative occupations, availability of alternative occupations, investment in vessels and gear;

(2) extent of past participation in the fishery, including but not limited to the number of years participation in the fishery, and the consistency of participation during each year.

AS 16.43.250.

Those who would suffer "significant economic hardship" if excluded are placed in

---

1. The CFEC was created to administer the system of limited entry into Alaska's commercial fisheries, established in 1973. *See* ch. 79, § 1, SLA 1973, codified (as amended) at AS 16.43.-010–.380.

2. A much more detailed history and analysis is given in *Commercial Fisheries Entry Comm'n v. Apokedak*, 606 P.2d 1255 (Alaska 1980).

3. For all fisheries, distressed or otherwise, the CFEC is to establish an "optimum" number of permits and implement a "buy-back" program when the number of permits outstanding exceeds the optimum, funded by assessments on the outstanding permits. AS 16.43.290–.320. New permits may be issued when the number of outstanding permits is less than the optimum. AS 16.43.330.

the top priority classification, and may not be denied a permit even if this results in exceeding the maximum. After distribution to this class, permits are to be awarded in descending order of priority, and if there are insufficient permits for all whose within a particular priority classification, the selection from among that group is to be made by lottery. AS 16.43.270.

Under these statutory provisions, the CFEC established a complex point system for determining categories of applicants, and set up an initial application period[4] of December 19, 1974, to March 18, 1975. 20 AAC 05.510(a).

As noted above, the prior gear license requirement has engendered much litigation. As originally passed, the statute limited applicants to those "who have harvested fishery resources commercially while participating in the fishery as holders of gear licenses ... before January 1, 1973." Ch. 79, § 1, SLA 1973. In 1974, the statute was amended (ch. 126, § 3, SLA 1974) to read as follows:

Sec. 16.43.260. *Application for initial issue of entry permits.* (a) The commission shall accept applications for entry permits only from applicants who have harvested fishery resources commercially while participating in the fishery as holders of gear licenses issued under AS 16.-05.536–16.05.670 before the qualification date established in (d) or (e) of this section.

. . . .

(d) Except as provided in (e) of this section, an applicant shall be assigned to a priority classification based solely upon his qualifications as of January 1, 1973.

(e) When the commission establishes the maximum number of entry permits for a particular fishery under § 240 of this chapter after January 1, 1975, an applicant shall be assigned to a priority classification based solely upon his qualifications as of January 1 of the year during which the commission establishes the maximum number of entry permits for the fishery for which application is made.

In *Isakson v. Rickey,* 550 P.2d 359 (Alaska 1976), this court, dealing with the statute as it stood before its amendment, struck down the January 1, 1973, gear license cut-off date as violative of equal protection to the purpose of the legislation, *i. e.,* to segregate hardship and nonhardship cases. *Id.* at 365; AS 16.43.250 ("[T]he commission shall adopt regulations establishing qualifications for ranking applicants for entry permits according to the degree of hardship which they would suffer by exclusion from the fishery . . . .")

Subsequent to *Isakson,* the CFEC set up a new application period (the original application period, December 19, 1974, to March 18, 1975, as established by 20 AAC 05.-510(a), having already expired prior to *Isakson*) of January 15, 1977, to September 30, 1977, but only for those who had fished with gear licenses for the first time during 1973 or 1974—*i. e.,* only those to whom permits had been (or would have been) wrongfully denied prior to *Isakson.* 20 AAC 05.510(f).[5]

Appellants, who had been eligible to apply during the initial application period, but had not filed applications during that period, now attempted to apply during the new period. They were rejected because, not having held gear licenses *for the first time* during 1973 or 1974, they were not eligible to apply during this new period. This forms the basis for their complaints.

Appellant Vik filed an application for a Prince William Sound gill net permit on March 14, 1977. A notice of determination

---

4. Under AS 16.43.260(b), the CFEC is to "establish opening and closing dates, places and form of application for entry permits for each fishery."

5. This court's latest pronouncement on the gear license requirement came in *Commercial Fisheries Entry Comm'n v. Apokedak,* 606 P.2d

1255 (Alaska 1980), which decided that (1) *Isakson* had not invalidated the gear license requirement in its entirety, only the 1973 cut-off date for the gear license requirement; and (2) the general gear license requirement did not violate the equal protection clauses of the Alaska or United States Constitutions.

denying the application as untimely was sent to Mr. Vik by the CFEC on June 22, 1977, and a final administrative decision affirming the denial without hearing was sent on July 20, 1977. Under the CFEC's regulations, the applicable period during which Mr. Vik could have applied was December 18, 1974 to April 18, 1975. It was not disputed that Mr. Vik did not file an application during this period. The reason Mr. Vik missed the deadline was an illness—double pneumonia—which kept him from fishing during the time in which the CFEC was publicizing the new requirement of a limited entry permit, and thus he did not learn of the requirement at all until after the deadline had passed.

Appellant Fowler's case involved a more lengthy correspondence, but his attempt to obtain a Cook Inlet drift gill net permit was eventually denied on the same ground—untimeliness—on August 17, 1977. Appellant Fowler apparently did learn of the permit requirement during late 1974. He asserts that he sent a letter to the CFEC on January 5, 1975, inquiring about the permit and the deadline; receiving no response, he assumed that the CFEC would not require him to obtain a permit. The Commission asserts that it never received this letter; but its position seems to be that, whether or not the letter was mailed, it cannot accept any late application from Mr. Fowler.[6] Late applications are accepted only in two situations: when it is alleged that an application sent in a timely fashion was lost in the mail or when an applicant relied to his detriment on advice given him by an agent of the CFEC.[7] Neither appellant fits either category.

Both Vik and Fowler appealed, but the superior court upheld the CFEC, noting:

> I am in agreement with the Commission's interpretation of *Isakson*, that that decision does not require the agency to consider the applications of persons eligible to apply during the original application period but who failed to apply during that time. As I see it, that interpretation is correct. While it may be that a fair way to implement *Isakson* would be to start the permit issuance process all over again and to rate all applicants and holders together, it does not seem to me that the Commission is required to allow someone in Mr. Vik's position to apply. In effect, this appellant is attempting to get a second chance to apply when he had a fair chance to apply originally. The question of starting all over again is one of legislative policy which is beyond the power of this court to deal with at this point, in any event, and in the circumstances my judgment is simply that the decision of the Commission should be upheld for the reasons noted.

## II. SEVERABILITY [8]

Appellants argue that, if *Isakson* is retroactive, the entire original application process, dependent as it was on the unconstitutional gear license requirement cut-off date,

---

**6.** Originally, the superior court remanded Fowler's case for the limited purpose of determining whether Fowler held a gear license prior to January 1, 1973; if not, then a different application period was applicable to Fowler [January 15, 1977, to September 30, 1977, 20 AAC 05.510(f)] and his request to apply during this period should have been honored. Subsequently, however, the parties stipulated that Fowler did commercially harvest fish as a gear license holder prior to January 1, 1973, and is therefore in the same position as Vik, *i. e.*, he was eligible to apply during the original application period, December 18, 1974, to April 18, 1975.

**7.** Appellants have chosen not to assail this "misadvise or lost in the mail" policy, as the CFEC terms it.

**8.** Appellants initially chose to frame their argument in terms of whether the *Isakson* decision should be given retroactive or prospective effect. We agree with the CFEC position that that issue is not relevant to this decision; we find that framework unnecessary and confusing. Appellants contend that they should prevail either way, on statutory interpretation/severability grounds if the *Isakson* ruling is retroactive, and on equal protection grounds if the ruling is prospective. These two issues can be analyzed and resolved without resort to any retroactive/prospective analysis; it adds nothing to, and detracts nothing from, these two issues. Especially since the parties have not articulated the practical effect of retroactivity or prospectivity in this case, we do not think the framework useful.

was void, and therefore the application process should have been re-opened to all. In support, appellants cite case law for the general proposition that an act voided as unconstitutional is as inoperative as if it had never been passed.[9] The CFEC responds that this is an issue of severability, a framework which appellants adopt in their reply brief. As above, we find that the "retroactive" characterization is unnecessary and confusing, and we will analyze the severability point without considering retroactivity.

▮ The legislature has enacted a general savings clause at AS 01.10.030:

Any law heretofore or hereafter enacted by the Alaska legislature which lacks a severability clause shall be construed as though it contained the clause in the following language, "If any provision of this Act, or the application thereof to any person or circumstance is held invalid, the remainder of this Act and the application to the other persons or circumstances shall not be effected [sic] thereby."

This was interpreted in *Lynden Transport, Inc. v. State*, 532 P.2d 700 (Alaska 1975), as creating a small presumption in favor of severability, even weaker than the slight presumption created by a specific severability clause. *Id.* at 712–13. "A provision will not be deemed severable 'unless it appears both that, standing alone, legal effect can be given to it and that the legislature intended the provision to stand, in case others included in the act and held bad should fall.'" *Id.* at 713. "Because a separability clause purports to be an expression of the legislature's intent, it is logical to view the inquiry when a separability clause is present in an act as being concerned not so much with discovering legislative intent, but rather with determining only whether the valid portion is sufficiently independent reasonably to justify separate enforcement." 2 C. Sands, Sutherland Statutory Construction § 44.08, at 350 (4th ed. 1973).

The parties agree that the overall structure of the Limited Entry Act is severable and can stand. The CFEC contends that only the gear license requirement cut-off date of January 1, 1973, was invalidated by *Isakson*, and the remainder of the Act stands. Appellants contend that the entire original application process was void, since it was dependent on the unconstitutional cut-off date.

More specifically, the disagreement is over the severability of the AS 16.43.260(a) gear license requirement cut-off date of January 1, 1973, struck down in *Isakson*, from two other provisions of the statute: (1) from the remainder of subsection (a), imposing the gear license requirement generally; and (2) from subsection (b) of the same statute, empowering the CFEC to establish the opening and closing dates for application periods.[10]

The CFEC argues that the January 1, 1973, gear license requirement cut-off date is severable from the remainder of subsection (a), and that the court has already reached that result sub silentio in *Apokedak*,[11] by upholding the prior gear license requirement which appears in the very same sentence of subsection (a) as the date struck down in *Isakson*. Appellants respond that simple excision of the January 1,

---

**9.** *See, e. g., Cummings v. Morez,* 42 Cal.App.3d 66, 116 Cal.Rptr. 586, 591 (Cal.App.1974): "A statute which violates either constitution is to that extent void and '[i]n legal contemplation, a void act is as inoperative as though it had never been passed.'" (Citations omitted.)

**10.** Subsections (a) and (b) in their entirety read:
    Sec. 16.43.260. *Application for initial issue of entry permits.* (a) The commission shall accept applications for entry permits only from applicants who have harvested fishery resources commercially while partici-

pating in the fishery as holders of gear licenses issued under AS 16.05.536–16.05.670 before the qualification date established in (d) or (e) of this section.
    (b) The commission shall establish the opening and closing dates, places and form of application for entry permits for each fishery. The commission may require the submission of specific verified evidence establishing the applicant's qualifications under the regulations adopted under § 250 of this chapter.

**11.** *Commercial Fisheries Entry Comm'n v. Apokedak,* 606 P.2d 1255 (Alaska 1980).

1973, gear license requirement cut-off date from the original statute leads to a result not adopted by the CFEC:

> The commission shall accept applications for entry permits only from applicants who have harvested fishery resources commercially while participating in the fishery as holders of gear licenses issued under AS 16.05.036—16.05.670.

Appellants argue that simply excising the cut-off date leaves a statute which would require the Commission to accept applications from all persons holding a gear license at some time during the years 1960 through 1977, and, because the Commission has been accepting applications in the salmon fisheries only from those holding gear licenses during the years between 1960 and 1974,[12] it is clear that the Commission itself has not simply severed the cut-off date from the remainder of AS 16.43.260(a) in order to determine eligibility to apply.

We find it unnecessary to resolve this particular branch of the problem in its entirety. Assuming arguendo that the excision should be made from the original statute (and no party here has argued otherwise), and assuming arguendo that, as appellants contend, the CFEC's modification has contravened the result that would be reached by a simple excision (i. e., simple excision leaves a statute which would require the Commission to accept applications from all persons who held a gear license at some time during the years 1960 through 1977, but the Commission has been accepting applications in the salmon fisheries only from those who held gear licenses for a year between 1960 and 1974), those injured are those individuals who may have held a gear

license for the first time between 1975 and 1977. If and when one of them raises the issue, the courts will decide the merits of the argument, as well as the validity of the assumptions. But appellants are not in this position. They did not hold a gear license for the first time during the period from 1975 to 1977; they held gear licenses during the period from 1960 to 1972. They have no standing to raise the issue of any possible injuries to the 1975–77 first-time gear license holder group by the CFEC's possibly faulty implementation of the *Isakson* decision. *See Younker v. Alaska Commercial Fisheries Entry Commission*, 598 P.2d 917, 920–21 (Alaska 1979).[13]

The second and, we think, only germane severability issue is that of the severability of subsection (b) from subsection (a). The CFEC argues that since the applications were denied as untimely, the issue here concerns the CFEC's power under subsection (b) to set application periods and deadlines, and since subsection (b) is severable, these denials were valid.[14] Appellants do not challenge the severability of subsection (b), but nonetheless assert that their argument stands, since they are not challenging the application deadline itself, but rather the CFEC's exclusion of 1960 to 1972 gear license holders from the second application period.

We conclude that the state has the better argument on this point. Appellants were not prejudiced by the January 1, 1973, cut-off date invalidated in *Isakson*, nor by the general gear license requirement upheld in *Apokedak*, nor by any other provision of subsection (a); they were prejudiced by the

---

**12.** AS 16.43.260(a) and (d); 20 AAC 05.510(a) and (f).

**13.** In *Younker*, we noted:

> We need not consider Younker's argument that the preferential treatment afforded gear license holders in the award of past participation and economic dependence points frustrates the purpose of the Act and discriminates against him. Younker has shown no injury from this preference.
>
> . . . .
>
> Younker's constitutional challenge to the point classification system has two bases:

that it unjustly discriminates against applicants who were not gear license holders in the years preceding the Limited Entry Act, and that it unfairly discriminates against those fishermen who elected to work during the off season. Younker has no personal stake in the outcome of his first claim; he did not lose points because he lacked a gear license, but because he did not participate in or depend on the fishery.

598 P.2d at 920–21 (footnotes omitted).

**14.** For text of subsection (b), see note 10 *supra.*

expiration of their original application period and the refusal of the CFEC to open the new application period to those in appellants' position (*i. e.*, those eligible to apply during the initial period who did not do so). It seems clear that this stems not from any provision of subsection (a), but from the CFEC's exercise of its authority under subsection (b) to "establish the opening and closing dates ... of application for entry permits."[15]

Thus, we need not refine any further the *Isakson-Apokedak* issue as to how much of subsection (a) remains valid; for, since appellants' complaint concerns the CFEC's exercise of its authority under subsection (b), we need only decide that subsection (b) did not fall along with that portion of subsection (a) found invalid in *Isakson*. Especially since appellants apparently do not contest the severability of subsection (b),[16] we must conclude that subsection (b) is severable.

Thus, we conclude that *Isakson* does not compel the CFEC to consider appellants' applications beyond the administratively-set deadlines for applying.

## III. EQUAL PROTECTION

■ Appellants also argue that the restriction of the later application period to those *wrongfully precluded from applying* during the earlier period violates the equal protection provisions of the federal and state constitutions (United States Const. Amend. XIV; Alaska Const.Art. I, § 1).

Appellants concede that the existence of an application deadline does not, in and of itself, violate the equal protection clause of

either the Alaska or the United States Constitution. *See Silides v. Thomas*, 559 P.2d 80, 88–89 (Alaska 1977). Instead, they rely on two alternative theories, one set forth in their original brief, one in their reply brief.

The parties agree on the test to be applied: first, the court must ascertain the true purpose of the statute or regulation and determine whether its purpose is within the power of the agency and the court must then determine whether the classification substantially furthers the administrative purpose. The parties also agree that the purpose of the regulation (20 AAC 05.-510(f)) is to allow persons holding gear licenses in 1973 or 1974 to compete for a permit on an equal footing with those who had held gear licenses from 1960 to 1972.

They disagree, however, whether the classification substantially furthers the administrative purpose. Appellants first argue that the classification frustrates the purpose, since "[i]t was obviously impossible for the Commission to compare the relative hardship of 1973 and 1974 gear license holders with the hardship of those holding a gear license in previous years, when the latter were not allowed to submit an application after *Isakson*.... It is, of course, impossible to weigh the relative hardship of gear license holders unless all who held gear licenses in the relevant years are allowed to apply." However, the CFEC's brief points out, and appellants do not appear to contest, that all applications from both groups were measured and ranked by precisely the same point system, and permits were issued to each group at the same point level.

---

**15.** In this respect, this situation can be analogized to one in which the CFEC establishes two separate application periods, depending on the initial letter of the applicant's last name (one period for those whose last names begin with A–M, and the other for those whose last names begin with N–Z), and an applicant who was to have applied during the first period but did not do so now seeks to apply during the second. This would clearly involve an attack on the constitutionality and operation of subsection (b), not subsection (a); as such, it would not fall merely because some provision (a) was found unconstitutional as long as the two sub-

sections were found to be severable under the rules laid out above.

**16.** Even if appellants did contest the point, we think that such a ruling follows a fortiori from *Apokedak*. In that case, the court ruled that *Isakson* did not invalidate the subsection (a) gear license requirement in its entirety. Having ruled that some portion of AS 16.43.260(a), the very provision attacked in *Isakson*, still stands, it would be anomalous indeed for us to rule that *Isakson's* reach went beyond subsection (a) to invalidate subsection (b) also.

The CFEC even contends that the solution proposed by appellants—opening up the new application period to *all* eligible applicants—would itself violate equal protection, since appellants will have had two opportunities to apply and the initial applicants only one.

Appellants, in their reply brief, perhaps realizing the weakness of their first rationale, propose an alternative argument to their first equal protection attack. The CFEC, they argue, had to create a "new pool" of permits which it had not originally planned to issue; 1960–1972 gear license holder applicants, including appellants, are excluded from eligibility for this new pool, under a classification which, like that in *Isakson*, bears no substantial relationship to the administrative purpose which the parties agree was to allow all those holding a gear license from 1960 through 1974 to compete on an equal footing for available permits.

Appellants have correctly articulated the applicable standard and the administrative purpose here, but we cannot agree that the CFEC's classification scheme bears no substantial relationship to that purpose. The classification in issue here is a remedial one, designed to provide the 1973–1974 gear license holder applicant group with the opportunity to apply, wrongfully denied to them before *Isakson*. The CFEC's remedy accomplishes this with a minimum of inconvenience to the 1960–1972 gear license holder group. Appellants here were not precluded from applying with the 1960–1972 group, and their suggested remedy here would offer them a second opportunity to apply, a "second chance" which would not be afforded to the 1973–1974 gear license holder group. Although we do not accept the CFEC's contention that this proposed remedy would in itself violate equal protection, we cannot say that the CFEC was constitutionally required to implement it.

The CFEC's actions have afforded gear license holders from 1960–1972 and those from 1973–1974 with substantially equal opportunities to apply for entry permits,[17] the applications from the two groups to be assessed and awarded according to precisely the same criteria, in accordance with *Isakson*. Appellants here cannot require more.[18]

We thus conclude that the superior court correctly decided the issues presented by appellants in this case. The judgments of the superior court are therefore AFFIRMED.

---

17. We note that the 1960–1972 gear license holder applicant group had a period of three months in which to apply, with a possible 60-day extension. The 1973–1974 gear license holder group had a period of eight and one-half months in which to apply, with a possible 30-day extension. 20 AAC 05.510(a), (e), (f). The parties do not argue that these variations are significant, and we do not find them so.

18. Appellants also assert that the classification violates the equal protection clause of the United States Constitution. They do not invoke a "strict scrutiny" analysis, but rather argue that there is no rational basis for the classification on the same reasoning as their substantial relationship argument under the Alaska equal protection clause. Since we have concluded that the classification is permissible under the more stringent state equal protection test, it is a fortiori permissible under the federal equal protection test. We note that the United States Supreme Court recently reaffirmed its traditional rational basis test, limiting its inquiry to whether the legislative act "achieved its purpose in a patently arbitrary or irrational way." *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 177, 101 S.Ct. 453, 460, 66 L.Ed.2d 368, 377 (1980).