Anthony BARTLETT, David Bartlett,
Larae Bartlett, and Lorrie
Bartlett, Appellants,

v.

STATE of Alaska, COMMERCIAL
FISHERIES ENTRY COM-
MISSION, Appellee.

No. S–7377.

Supreme Court of Alaska.

Dec. 12, 1997.

C. Michael Hough, Homer, for Appellants.

Robert C. Nauheim, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

*OPINION*

FABE, Justice.

I. *INTRODUCTION*

This appeal involves applications for limited entry fishing permits submitted by Lorrie, David, Anthony, and LaRae Bartlett (collectively, the Bartletts). The Commercial Fisheries Entry Commission (CFEC) denied the Bartletts' applications and requests for an administrative hearing, concluding that because the Bartletts submitted their applications after the final deadline, it could not

issue the requested permits. The superior court upheld this ruling, and we affirm.

II. *FACTS AND PROCEEDINGS*

In the fall of 1974 CFEC mailed application request forms, commonly called "yellow cards," to the Bartletts. Lorrie requested applications for a Southeastern drift gill net permit and a Bristol Bay drift gill net permit. Anthony requested an application for a Bristol Bay drift gill net permit. David requested applications for a Southeastern drift gill net permit, a Bristol Bay drift gill net permit, and a Bristol Bay set gill net permit.

The application forms bore the notice, "IMPORTANT: READ INSTRUCTIONS BEFORE COMPLETING THIS FORM," and contained the following instructions in capital letters in a box near the top of the first page:

ANY TIME YOU HAVE *20* OR MORE *VERIFIABLE* POINTS, YOU WILL RECEIVE A PERMIT AND YOU MAY SKIP TO PART 3 ON THE REVERSE SIDE. SINCE PERMITS MAY BE AWARDED TO THOSE WITH FEWER VERIFIABLE POINTS, ALL OTHER APPLICANTS, INCLUDING THOSE UNCERTAIN OF POINTS, ARE URGED TO COMPLETE ALL LINES FROM 9 TO 24.

The application deadline was March 18, 1975.

The Bartletts allege that they discussed their applications with CFEC Chairman Charles Stovall prior to the deadline. They claim that Stovall informed them that "there was no need for them to have CFEC process an application by them for a fishery in which they did not have twenty (20) points." They also allege that Commissioner Stovall informed them that "there were certain types of points that cannot be duplicated in each application, such as economic dependence points." The Bartletts allege that, based on this information, they chose to abandon their applications for the Bristol Bay permits at issue in this case. Instead, they applied for and received only permits for fisheries in Southeast.

In 1984, apparently at the suggestion of a CFEC employee, Lorrie, Anthony, and LaRae sent a letter requesting information from

the Fisherman History File on their activity for the contested set net sites in Bristol Bay. Additionally, their letter stated:

> During the original application period all three of us did receive a notice from the entry commission of at least 1 or 2 points for set-net permits, however we did not apply at that time because we were told that we would not have enough points to receive a permit. We feel we are now covered by the *Wassillie*[1] decision and will be submitting our applications based on that decision.

CFEC responded:

> We received your request to research your licensing/landing history to determine whether or not you were a gear license holder and made landings sometime during the years 1960–1972.
>
> Your request for a licensing/landing records check has not been construed as an application received by the Commission. If you intend to apply for an entry permit under the *Wassillie* settlement, you must contact the Alaska Legal Services Corporation nearest you by March 1, 1985, and file an application with them.
>
> . . . .
>
> Once an application has been filed at the Commission through the Alaska Legal Services Office, a complete licensing/landing history will be done.

Alaska Legal Services Corporation (Legal Services) filed applications on behalf of Lorrie and LaRae with CFEC for Bristol Bay set net permits. These applications incorrectly represented that Lorrie and LaRae were Alaska Natives. All the Bartletts are Caucasian. Legal Services refused to forward Anthony's application because he did not claim to be an Alaska Native. In that letter, Legal Services included information about appealing its decision not to submit his application. It is unclear whether Legal Services ever submitted David's application.

On September 6, 1985, CFEC informed LaRae that it could not consider her application for class membership because she "did not hold a gear license [between 1960 and 1972] in the fishery for which [she had] applied." On October 1, 1985, Helen Bartlett, LaRae's mother, wrote to Superior Court Judge Brian C. Shortell contesting CFEC's determination. Judge Shortell ordered that LaRae be allowed until November 1, 1985 to submit evidence proving her eligibility. On November 6 CFEC notified LaRae that it had not received any evidence and that she "must submit any evidence by December 1, 1985." It also stated that her last opportunity to submit evidence regarding her potential eligibility would be at a hearing December 19 before Judge Shortell. She did not submit any evidence or appear at the hearing.

On February 13, 1986, CFEC informed Lorrie Bartlett that it had determined that he was not a member of the settlement class and informed him of his right and opportunity to challenge the decision. He never challenged the CFEC's determination.

In January 1989 the Bartletts requested information concerning their permit applications. In June 1989 CFEC received applications from the Bartletts for Bristol Bay set net permits. The cover letters and attached affidavits stated that the Bartletts' applications were late because of the advice that former Commissioner Stovall gave them prior to April 1975.

CFEC informed the Bartletts that because they had submitted the applications fourteen years after the close of the application period for the fishery, CFEC was not authorized to accept them. In making this determination, CFEC relied on 20 Alaska Administrative Code (AAC) 05.515 (1997),[2] which CFEC de-

---

1. We described the *Wassillie* settlement in *Riley v. Simon*, 790 P.2d 1339 (Alaska 1990). "In January 1975, a class-action suit was brought against CFEC on behalf of those Alaska Native persons who because of geographic location, language, cultural background, or race, are unable to have a completed, or substantially completed, application mailed to CFEC prior to the March 18, 1975 deadline." *Id.* at 1340 (quotation omitted). The parties entered a consent agreement extending the application period until April 18, 1975. *Id.* However, after "[m]any eligible Na-

tives nonetheless failed to file timely applications," the litigation was renewed. *Id.* CFEC prevailed in the trial court, and plaintiffs appealed. *Id.* Before a decision was issued, the parties settled. *Id.*

2. 20 AAC 05.515 provides:

> After the close of the application periods established in 20 AAC 05.510, the commission will not accept an application for a permanent entry permit for any fishery if the application is received by the commission after the maxi-

termined required "that after the close of the application periods ... the Commission will not accept an application for a permanent entry permit for any fishery received by the Commission after the maximum number of permits have been issued for the particular fishery applied for...." CFEC stated that since "the Commission has reached the maximum number of permits in the fishery applied for, we cannot accept a late application from [the Bartletts]."

The Bartletts each filed a timely request for a hearing, and CFEC denied the requests. A hearing officer affirmed CFEC's denials, concluding that because CFEC could not accept applications after the final deadline as a matter of law, it was not required to provide a hearing. In response to the Bartletts' requests for reconsideration, CFEC denied further administrative review.

The Bartletts appealed to the superior court, asserting that the CFEC violated their due process rights by not granting a hearing so that they could present evidence on their diligent pursuit of fishing permits. They also claimed that by treating them differently than other applicants because of their race, CFEC violated their equal protection rights. The superior court rejected both arguments, and the Bartletts now appeal.

## III. DISCUSSION

### A. Standard of Review

■ When the superior court acts as an intermediate court of appeal, we review the merits of the underlying administrative decision independently, giving no deference to the superior court's decision. See Usibelli Coal Mine, Inc. v. State, Dep't of Natural Resources, 921 P.2d 1134, 1141 (Alaska 1996). This case involves both issues of constitutional law, which we review under the independent judgment standard, Sonneman v. Knight, 790 P.2d 702, 704 (Alaska 1990), and CFEC's interpretation of its own regulations, which we review under the "reasonable basis" standard. Rose v. Commercial Fisheries Entry Comm'n, 647 P.2d 154, 161 (Alaska 1982).

### B. The CFEC Did Not Violate the Bartletts' Due Process Rights by Denying Them a Hearing.

■ An individual's interest in an application for a limited entry fishing permit is entitled to due process protection. See Estate of Miner v. Commercial Fisheries Entry Comm'n, 635 P.2d 827, 832 (Alaska 1981). Normally, a hearing is one of the basic components of due process. Id. at 834. However, this rule

> is subject ... to the exception that one need not hold a hearing if there is nothing to hold a hearing about[.] ...
>
> Thus, if an application is rejected because it is outside valid time limits and this lateness is apparent on the face of the application and is not contested by the applicant, then there would be no substantial and material issue which could be resolved at a hearing, and thus no need to hold the hearing at all.

Id.

■ The Bartletts sought a hearing to demonstrate that their applications fell under the so-called "misadvice" exception to the application deadline. CFEC has accepted untimely applications under this exception "when an applicant relied to his detriment on advice given him by an agent of the CFEC." Vik v. Commercial Fisheries Entry Comm'n, 636 P.2d 597, 600 (Alaska 1981). CFEC, however, contends that the final application deadline established by 20 AAC 05.515 "absolutely foreclosed, as a matter of law," its authority to accept "applications filed after January 2, 1981." [3]

We agree with CFEC's interpretation of 20 AAC 05.515. As CFEC argues, its refusal to accept applications under the misadvice exception after the final deadline is strongly supported by the State's interest in allowing only the predetermined maximum number of permits for a particular fishery. See Wickersham v. State, Commercial Fisheries Entry Comm'n, 680 P.2d 1135, 1142 (Alaska 1984) (stating that application deadline furthered the purpose of the Alaska Limited

mum number of permits have been issued for the particular fishery applied for or after permits for the particular fishery applied for have begun to be issued under 20 AAC 05.550(c).

3. Although the maximum number of permits for the fishery was realized prior to August 10, 1978, 20 AAC 05.515 did not take effect until January 2, 1981.

Entry Act by restricting the number of people involved in each fishery, thereby providing an economic benefit to fishermen and furthering conservation of the fishery). CFEC decisions applying the misadvice exception do not compel a different result. As the Bartletts acknowledge, these cases all involved permit applications filed prior to the date on which 20 AAC 05.515 took effect.

Thus, even if the Bartletts' allegations of misadvice are true, CFEC properly denied their late applications under 20 AAC 05.515. The Bartletts' argument presented "no substantial and material issue which could be resolved at a hearing," and due process therefore did not require that CFEC hold one.[4] *Estate of Miner*, 635 P.2d at 834.

### C. *CFEC Did Not Violate the Bartletts' Equal Protection Rights.*

 The Bartletts also argue that CFEC violated their constitutional rights to equal protection by accepting applications filed after the final deadline by members of the *Wassillie* settlement class but not accepting their late applications under the misadvice exception. They contend CFEC did not accept their late applications because they were not Alaska Natives. To the extent that the Bartletts claim that CFEC allowed members of the *Wassillie* class to file applications under the misadvice exception after the final deadline, they are mistaken. The plaintiff class in *Wassillie* sought relief for constitutional violations, not for misadvice. *See Riley v. Simon*, 790 P.2d 1339, 1340 (Alaska 1990). Furthermore, the *Wassillie* lawsuit was filed in 1975, well before the effective date of 20 AAC 05.515 in 1981. *See id.*

To the extent that Lorrie and LaRae also argue that CFEC violated their equal protection rights by not including them in the settlement class, they are barred by *res judicata.*[5] Under that doctrine, "a final judgment will bar any subsequent suit on the

same claim or demand, between the same parties or their privies." *Jackinsky v. Jackinsky*, 894 P.2d 650, 654 (Alaska 1995). The superior court entered final judgment determining class membership and approving the settlement in 1988. *See Riley*, 790 P.2d at 1341. Although CFEC specifically informed Lorrie and LaRae of the procedures for challenging the decision to deny them class membership, they failed to take advantage of those procedures or appeal the superior court's final judgment. Therefore, *res judicata* now bars any attempt to challenge the decision to exclude them from the settlement class.

## IV. CONCLUSION

For the reasons above, we AFFIRM the superior court decision upholding CFEC's denial of the Bartletts' applications for limited entry fishing permits and their requests for a hearing.

---

4. The Bartletts also argue that their alleged actions in discussing and reviewing applications for the contested permits with a former commissioner of CFEC "should be treated as a timely application." As CFEC points out, however, the Bartletts did not raise this argument before CFEC or the superior court. Indeed, the Bartletts repeatedly acknowledged that their applications were late before both CFEC and the superior court. Therefore, we refuse to consider this argument on appeal. *See Gates v. City of Tenakee Springs*, 822 P.2d 455, 460 (Alaska 1991).

5. Lorrie and LaRae base their argument on the assertion that CFEC refused to accept their permit applications in 1985 under the *Wassillie* settlement. The Bartletts never clearly asserted that David and Anthony submitted applications at that time, and the record does not reflect that they did.