Craig B. LEUTHE, Appellant,

v.

STATE of Alaska, COMMERCIAL
FISHERIES ENTRY COM-
MISSION, Appellee.

No. S–9343.

Supreme Court of Alaska.

March 30, 2001.

C. Michael Hough, Homer, for Appellant.

John T. Baker, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

OPINION

FABE, Chief Justice.

## I. INTRODUCTION

Craig Leuthe applied to the Alaska Commercial Fisheries Entry Commission (CFEC) for an entry permit three years after the 1975 deadline. CFEC accepts late applications if the applicant was misadvised about

eligibility prior to the 1975 deadline. CFEC considered Leuthe's claim in several proceedings and rejected his claim on several grounds, including the fact that Leuthe had not been misadvised. Leuthe appealed, and the superior court again rejected his claim. Because Leuthe has not met his burden of showing that he was misadvised about his eligibility, we affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

In 1973 the Alaska Legislature enacted the Limited Fisheries Entry Act, AS 16.43.010–.990.[1] The Act established the Commercial Fisheries Entry Commission, and charged it with protecting distressed fisheries by granting a limited number of access permits to commercial fishers.[2] Under the Act, only persons who had already held a gear license prior to the Act were eligible for permits.[3] CFEC was directed to rank permit applicants based on the degree of hardship they would suffer if excluded from the fishery; this in turn depended on how financially reliant on the fishery an applicant had been in past years.[4] CFEC established a complex point system for ranking applicants,[5] and for the fishery at issue in this case, set up an initial application period of December 19, 1974 through March 18, 1975.[6] This deadline was later extended to April 18, 1975, with an additional extension to May 18, 1975 for good cause shown.[7] The CFEC apparently granted the May 18 "good cause" extension to every applicant who requested it. It also made considerable effort to notify eligible persons of the impending change in the law, using mass mailings, individual phone calls, and television, radio, and newspaper an-

1. See Vik v. Commercial Fisheries Entry Comm'n, 636 P.2d 597, 598–99 (Alaska 1981).

2. See AS 16.42.020; AS 16.43.240.

3. See AS 16.43.260(a). Later cases and regulatory changes amended this requirement. See, e.g., Isakson v. Rickey, 550 P.2d 359 (Alaska 1976); State, Commercial Fisheries Entry Comm'n v. Templeton, 598 P.2d 77, 80–81 (Alaska 1979). These changes do not affect Leuthe's case. See Part IV.B.2, below.

4. See AS 16.43.250.

5. See AS 16.43.260(b); 20 AAC 05.600–.804 (1974).

6. See 20 AAC 05.510(a).

7. See 20 AAC 05.510(e).

nouncements.[8]

Craig Leuthe worked as a drift gill net fisher in Cook Inlet beginning around 1966. He held a gear license from 1967 to 1970, but made no recorded deliveries under those license numbers for two of those years. Leuthe and his partner sold their boat in 1970.

In 1975 Leuthe worked as a teacher in Anchorage. In early May of that year, after the initial permit application deadline, but before the May 18 "good cause extension" deadline, he visited the Alaska Department of Fish and Game to inquire about an entry permit. A Fish and Game employee told him that he did not qualify for enough points under CFEC's ranking system to receive a permit, and advised him not to bother applying. Leuthe did not apply, but later learned that friends with similar fishing experience had received permits. Therefore, in June of 1978, three years after the deadline, Leuthe filed an application for a Cook Inlet salmon drift gill net entry permit. He initially claimed nine points, but amended his application the next day to claim eighteen. Only persons who showed eligibility for at least sixteen points could receive the Cook Inlet entry permits.

CFEC initially denied the application, and Leuthe requested a hearing. After numerous delays, the hearing took place in September of 1981. Leuthe was represented by counsel and presented testimony of a witness, as well as documentary evidence. At his request, the record was kept open through January 7, 1982 so that Leuthe could submit additional evidence relating to his point claims.

Under CFEC's "misadvice policy," CFEC could accept Leuthe's late application only if Leuthe showed that (1) he spoke to the CFEC agent before the deadline, (2) he received bad advice from the agent, and (3) he missed the deadline as a result of this misadvice. The hearing officer found Leuthe ineligible for this "misadvice policy" exception to the deadline on several grounds. First, he concluded that April 18, 1975 was the applicable deadline. Leuthe was not eligible for the May deadline because he made no showing of good cause—in fact, the hearing officer concluded, Leuthe's lateness was caused by his own lack of due diligence. Even if this problem were set aside, the hearing officer reasoned, Leuthe would not be eligible for the "misadvice policy" exception to the deadline because the agent who spoke to Leuthe correctly advised him that he did not have enough points to obtain an entry permit. The hearing officer reviewed Leuthe's point claims, and found him eligible for only nine of the sixteen points necessary to obtain a permit. He recommended that CFEC deny Leuthe's application.

CFEC notified Leuthe of this recommendation, and of his right to respond and request an oral hearing before CFEC. Leuthe did not respond.

In 1986 CFEC considered the hearing officer's recommendation and issued a decision denying Leuthe's application. CFEC concluded without discussion that Leuthe's application was barred for late filing. It explicitly declined to consider or adopt the hearing officer's analysis of Leuthe's point claims.

Leuthe petitioned for reconsideration of this decision, listing specific grounds that he challenged, and CFEC agreed to review the decision on those grounds.

Twelve years later, in 1998, CFEC issued its decision on reconsideration of Leuthe's claims. The decision reviewed Leuthe's case history in detail. CFEC concluded that, because Leuthe had not alleged any good cause, the applicable deadline was April 18, 1975. Leuthe missed this deadline, it found, because of his own lack of interest in fishing, and not because of any advice received. In addition, CFEC recalculated Leuthe's claimed points and concluded that the agent's advice had been correct: Leuthe was ineligible for a permit. CFEC again denied Leuthe's application.

Leuthe appealed to the superior court. Judge Harold M. Brown affirmed CFEC's

---

**8.** *See Wickersham v. State, Commercial Fisheries Entry Comm'n,* 680 P.2d 1135, 1143–45 (Alaska 1984).

denial of a permit, holding that because Leuthe was substantively ineligible for a permit, his procedural and timeliness arguments were moot. Leuthe now appeals to this court.

Throughout the pendency of his application, Leuthe has maintained an interim use permit for the Cook Inlet salmon drift gill net fishery.

## III. STANDARD OF REVIEW

■ Because the superior court acted in this case as an intermediate court of appeal, we will review the merits of the underlying administrative decision independently, without deferring to the superior court's decision.[9] We may affirm the decision below on any ground supported by the record.[10]

■ When an agency's interpretation of statutory terms "implicates agency expertise or the determination of fundamental policies within the scope of the agency's statutory functions," we apply the "reasonable basis" standard of review.[11] When the agency's specialized knowledge and experience would not be particularly probative of the meaning of the statute, we apply the independent judgment standard and reach our own interpretation of the statute.[12] When an agency applies its discretionary power to waive or

uphold a deadline, we will overturn its decision only upon a showing of abuse of discretion.[13] Finally, we apply the "substantial evidence" standard to agency findings of fact.[14]

■ We review issues of constitutional law under the independent judgment standard.[15]

## IV. DISCUSSION

■ Because Leuthe filed his application three years after the 1975 deadline, CFEC need not consider the application unless Leuthe shows that he is eligible for the "misadvice" deadline exception.[16] Leuthe's required factual showing for this exception can be broken down into three elements: (1) that Leuthe spoke to the CFEC agent prior to the deadline,[17] (2) that the CFEC agent misadvised him, and (3) that Leuthe missed the deadline as a result of this misadvice. It is Leuthe's burden to show that the exception applies to his case;[18] unless he proves all elements of the misadvice exception, he cannot receive a permit.

■ Leuthe has not met the second element of this burden because he has not shown that the CFEC agent gave him misadvice. At no time since his 1981 hearing has

9. See Usibelli Coal Mine, Inc. v. State, Dep't of Natural Resources, 921 P.2d 1134, 1141 (Alaska 1996).

10. See Mackie v. Chizmar, 965 P.2d 1202, 1207 n. 4 (Alaska 1998).

11. Matanuska–Susitna Borough v. Hammond, 726 P.2d 166, 175 (Alaska 1986).

12. See id.

13. See Forquer v. State, Commercial Fisheries Entry Comm'n, 677 P.2d 1236, 1244 (Alaska 1984).

14. See Jones v. Commercial Fisheries Entry Comm'n, 649 P.2d 247, 249 n. 4 (Alaska 1982).

15. See Sonneman v. Knight, 790 P.2d 702, 704 (Alaska 1990).

16. Under the "misadvice or lost in the mail" policy, CFEC accepts late entry permit applications only upon a showing that the applicant filed late because of misadvice received from a CFEC agent, or because the application was lost

in the mail. We discussed this policy in Estate of Miner v. Commercial Fisheries Entry Commission, 635 P.2d 827 (Alaska 1981) (rejecting equal protection and due process challenges to the policy as applied to deny the late application of a mentally ill applicant) and Wickersham v. State, Commercial Fisheries Entry Commission, 680 P.2d 1135, 1140 (Alaska 1984) (rejecting statutory challenge to the policy because appellants lacked standing). See also Vik v. Commercial Fisheries Entry Comm'n, 636 P.2d 597, 600 (Alaska 1981). The "lost in the mail" prong of the policy is not at issue in this case; Leuthe has not claimed that his application was lost in the mail.

17. Although the hearing officer initially concluded that the Fish and Game employee who advised Leuthe was not an agent of CFEC, CFEC no longer advances this argument and it is not a part of this appeal.

18. See 20 AAC 05.520(a) ("Every applicant shall have the burden of establishing his qualifications for an entry permit."); 20 AAC 05.1820(d) ("The applicant or other party shall bear the burden of proving by a preponderance of the evidence that

Leuthe proven or even argued why he should qualify for more than the nine points awarded by the hearing officer. Because Leuthe has not shown that the advice he received in 1975 was wrong, his late application cannot be accepted under the "misadvice" exception. Leuthe's ineligibility for a license has been determined in proceedings which comported with due process. Therefore, we affirm the superior court and reject Leuthe's application.[19]

### A. *Leuthe Has Not Shown Eligibility for Enough Points to Receive a Permit.*

Both the hearing officer and CFEC on reconsideration considered Leuthe's point claims[20] in detail. Both concluded that Leuthe is ineligible for an entry permit. In his recommendation, the hearing officer stated that Leuthe had demonstrated eligibility for only nine of the sixteen points necessary to receive a permit. Although Leuthe claimed additional points, the hearing officer found the claims unsupported by evidence and applicable regulations. But even if the additional points had been granted, the hearing officer concluded that Leuthe could receive at most fifteen points; he would still not be eligible for an entry permit. In its decision on reconsideration, CFEC recalcu-

lated Leuthe's point claims and also concluded that he was eligible for, at most, nine points.

Leuthe has not directly argued before this court that CFEC erred in determining his point claims.[21] In fact, at no point since the initial hearing has Leuthe made arguments, presented evidence, or suggested that evidence existed to show that he is entitled to more than the nine points awarded by CFEC. We therefore conclude that Leuthe has not met his burden of showing eligibility for an entry permit.

### B. *Leuthe Received Due Process in the Procedures Considering His Point Claims.*

Leuthe raises a number of due process objections to the proceedings below. Fishery entry permit applicants are entitled to due process in the adjudication of their claims.[22] However, Leuthe has not demonstrated any violation of his right to due process.

### 1. *Leuthe has had adequate opportunity to prove his point claims.*

Leuthe has had ample opportunity to prove his point claims over the past nine-

a determination of the commission is erroneous.").

**19.** We reach this conclusion on grounds that Leuthe has not met his burden of proving misadvice. Therefore, we do not reach the question of what deadline should apply to his 1975 conversation with the CFEC agent.

Leuthe argues that his 1978 application should be considered timely because he spoke to the CFEC agent prior to the May 18, 1975 "good cause" deadline. As he points out, CFEC in its briefing for an unpublished superior court case, *Wassillie v. Adasiak*, 3AN–75–506 Civ., conceded that it never held any applicants to the April 18 deadline, but instead applied the May 18 deadline to all applicants without requiring a good cause showing. This argument is not without merit. However, no matter when Leuthe spoke to the agent, he cannot qualify for the misadvice exception without showing misadvice. Because we do not reach the issue of timeliness, we also need not address the estoppel and equal protection arguments advanced by Leuthe regarding his timeliness claims.

**20.** Leuthe's "point claims" are his claims that he had enough points under CFEC's point system to qualify for an entry permit.

**21.** Leuthe implied before the superior court and again before this court that the point claims were part of his appeal. However, he never discussed the claims themselves. Given this cursory treatment, we cannot consider the claims as part of this appeal. *See Adamson v. University of Alaska*, 819 P.2d 886, 889 n. 3 (Alaska 1991) ("where an argument is given only cursory statement in the argument portion of a brief, the point will not be considered on appeal"); *see also Nenana City School District v. Coghill*, 898 P.2d 929, 934 (Alaska 1995) (issue on appeal from administrative agency waived or abandoned when inadequately briefed before superior court).

**22.** *See Wickersham v. State, Commercial Fisheries Entry Comm'n*, 680 P.2d 1135, 1144 (Alaska 1984). The due process entitlement in CFEC hearings is subject to

the exception that one need not hold a hearing if there is nothing to hold a hearing about.... Thus, if an application is rejected because it is outside valid time limits and this lateness appears on the face of the application and is not contested by the applicant, then there would be no substantial and material issue which could be resolved at a hearing, and thus no need to hold the hearing at all.

teen years. He could have done so in 1982, when he was notified of his right to respond to the hearing officer's recommendations, again in 1986 when he petitioned CFEC for reconsideration, and yet a third time in 1999, when he appealed CFEC's decision to the superior court. Despite these opportunities, he has never advanced any argument that he is eligible for sufficient points to qualify for an entry permit and was therefore misadvised by the CFEC agent in 1975. Leuthe argues that CFEC did not afford him due process because the "[c]ommissioners refused [to] consider such point issues except to determine whether Mr. Leuthe was misadvised by an agent of CFEC." He claims that due process requires a separate hearing on point claims after the timeliness of his application has been determined. However, calculation of the point claims was a necessary step in resolving the misadvice question. Both the hearing officer and CFEC on reconsideration fully considered the claims as part of that inquiry. Leuthe does not explain, nor can we discern, any reason why due process should require separate hearings on logically intertwined issues.[23] We find no due process violation in CFEC's treatment of Leuthe's point claims.[24]

### 2. Leuthe has not shown that changes in the law affected his point claims.

While CFEC's 1986 decision on the hearing officer's recommendation was pending, we issued a series of decisions that prompted significant changes in CFEC regulations governing point claims.[25] Leuthe claims that he advanced new arguments in light of these changes, but was denied a hearing. This allegation, if substantiated, might support remand for a new hearing.[26] However, Leuthe neither explains any new point claims, nor documents his alleged communications with CFEC regarding the new claims. The record before us shows no sign of such claims; CFEC's seemingly exhaustive list of all communications with Leuthe does not indicate that Leuthe advanced any new arguments in light of changes in the law, or that CFEC denied a hearing to consider such arguments. Moreover, it appears that CFEC independently reviewed all pending cases at the time of the changes, and found no reason to change its assessment of Leuthe's claims. Because this allegation of due process violation is unsupported by the record or any detailed argument, we reject it.

### 3. CFEC's proposal to supplement the record did not violate due process.

Five months after CFEC submitted its certified record to the superior court, CFEC moved to supplement the record with new documentary evidence. The superior court never ruled on this motion, and CFEC's new documents were not admitted as evidence in this case. Leuthe raises numerous arguments why the documents should not be admissible. Because they were never admitted, we need not consider this issue.

### V. CONCLUSION

Because Leuthe has not shown that he was misadvised about his eligibility for a permit, despite procedurally adequate opportunities for him to make this showing, we reject his

---

*Miner,* 635 P.2d at 834.

**23.** In his reply brief, Leuthe argues that CFEC on reconsideration should not have considered his point claims, because he had asked for reconsideration of the timeliness issue only. Because this argument was raised for the first time in a reply brief before this court, it is waived. *See Conam Alaska v. Bell Lavalin, Inc.,* 842 P.2d 148, 158 (Alaska 1992); Alaska R.App. P. 212(c)(3). We note, however, that because of the misadvice policy, reconsideration of timeliness necessarily included reconsideration of Leuthe's points eligibility.

**24.** Leuthe also argues in his reply brief that all other late applicants were allowed a hearing on their point claims after the timing issue was resolved. Although Leuthe made the same unsupported factual assertion in the introduction of his opening brief, the argument appears only in the reply brief. Because the issue is not argued in the opening brief and appears only in the reply brief, it is waived. *See Conam,* 842 P.2d at 158; Alaska R.App. P. 212(c)(3).

**25.** *See* 20 AAC 05.525–526, 20 AAC 05.630(b)(4) (regulations governing point calculations for persons who held gear licenses in partnership or who claimed alternative occupation points).

**26.** *See Cashen v. State, Commercial Fisheries Entry Comm'n,* 686 P.2d 1219 (Alaska 1984) (requiring new hearings for fishery entry permit applicants based on changes in the law).

appeal and AFFIRM the decision of the superior court.