John T. CLEAVER, Appellant,

v.

STATE of Alaska, COMMERCIAL FISHERIES ENTRY COMMISSION, Appellee.

No. S–9689.

Supreme Court of Alaska.

June 7, 2002.

Bruce B. Weyhrauch, Law Office of Bruce B. Weyhrauch, Juneau, for Appellant.

Shannon O'Fallon, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

In his first attempt at participating in the Northern Southeast Inside Sablefish Longline fishery, John Cleaver "called it a season" after only two days because his homemade wooden bait chute was too dangerous, his equipment for fishing halibut proved inadequate for sablefish, and his line got tangled in the gear of other fishers. To qualify for skipper participation points towards a permanent limited entry permit, Cleaver characterized his problems as an "extensive mechanical breakdown." The Commercial Fisheries Entry Commission did not accept that characterization, and denied Cleaver the points he needed for a permit. The superior court affirmed the commission's decision and awarded attorney's fees to the state. We affirm in all respects.

## II. FACTS AND PROCEEDINGS

In 1973 the Alaska legislature enacted the Limited Fisheries Entry Act.[1] The act established the Commercial Fisheries Entry Commission and charged it with the duties of "regulat[ing] entry into the commercial fisheries for all fishery resources in the state" and "establish[ing] priorities for the application of the provisions of this chapter to the various commercial fisheries of the state."[2] The legislature required that the prioritization of fishery applicants be based on a reasonable balance of an applicant's degree of economic dependence on the fishery and extent of past participation in the fishery.[3]

The commission determined that the Northern Southeast Inside Sablefish Longline fishery could sustain a maximum of seventy-three commercial fishers.[4] The commission developed regulations to prioritize applicants for fishery permits using a one-hundred point scale with points awarded for economic dependence, vessel investment, and past participation.[5] The commission decided that all applicants with eighty-one to one hundred points would be given permanent entry permits because they would suffer significant economic hardship by exclusion from the fishery.[6] The permits remaining after the "hardship" applicants received permits would be awarded to those applicants with the highest point totals. As the applicants'

---

1. *See* ch. 79, § 1 SLA 1973; *Vik v. Commercial Fisheries Entry Comm'n,* 636 P.2d 597, 598 (Alaska 1981). The act is now codified at AS 16.43.010–.990.

2. AS 16.43.100(a)(1) & (2); *see also* AS 16.43.020.

3. AS 16.43.250(a).

4. 20 Alaska Administrative Code (AAC) 05.310(f)(1) (2000); 20 AAC 05.320(e)(1).

5. 20 AAC 05.701–.713.

6. 20 AAC 05.711(a).

point claims were verified, the commission periodically calculated the minimum points required for a permit based on the remaining number of permits and the point totals of the remaining applicants. Applicants who fell below this "denial point level" became ineligible for a permit. The remaining applicants—those with less than the eighty-one points but more than the current denial point level—received interim permits while their applications were being verified and processed.[7]

In 1972 John Cleaver began commercial fishing in Alaska as a troller. In 1979 Cleaver bought the F/V Deep Sea and fished for salmon and halibut. During the spring of 1983, he attempted to longline[8] for sablefish[9] for the first time in the Northern Southeast Inside Sablefish Longline fishery. Cleaver assumed that longlining for sablefish would be similar to the fishing at shallower depths that he had done previously.

Cleaver had several problems during his first attempt at longlining for sablefish in April 1983. First, the halibut anchors that Cleaver used were not heavy enough to get to the depths of sablefish. Second, the bait chute that he built was dangerous. Cleaver's makeshift wooden bait chute allowed the lines to bounce up and down to the extent that he feared for the safety of his crew. Third, Cleaver's depth sounding equipment gave readings in meters instead of fathoms, which Cleaver said gave him trouble judging the depth. As Jana Sushy, one of Cleaver's two deckhands who was on her first longline trip, admitted, "none of us really knew the proper details or overall concept." Cleaver's gear got tangled with the gear of another fisher, and Cleaver gave up longlining for sablefish after two days. Cleaver landed only 385 pounds of sablefish. Although the fishery was opened later that year between September 1–7 and October 10–14, Cleaver did not attempt to longline for sablefish again in 1983 because he did not have enough money to correct the problems with his equipment.

After the 1983 season, Cleaver bought the necessary equipment for longlining sablefish. In 1984 Cleaver successfully participated in the fishery.

In 1987 Cleaver applied for a permanent entry permit to the Northern Southeast Inside Sablefish Longline fishery. He claimed a total of sixty-five points: eighteen skipper participation points for the 1984 fishing season, seventeen skipper participation points for the 1983 fishing season, fifteen points for income dependence, and fifteen points for vessel investment.[10] The commission originally found that Cleaver qualified for only forty and one-half points. The commission allowed only seven and one-half points for vessel investment because Cleaver's wife was a co-owner of the F/V Deep Sea, and it disallowed any points for skipper participation in 1983, presumably because Cleaver's participation that year was so minimal. Cleaver timely requested an administrative hearing. At the hearing, Cleaver argued that he should get all fifteen points for vessel investment and seventeen points for skipper participation in 1983 based on extraordinary circumstances.

In 1991 a hearing officer decided that Cleaver was entitled to the full fifteen points for vessel investment because the Cleavers purchased the F/V Deep Sea as joint tenants to satisfy the financing bank's requirements and because Wendy Cleaver was not applying for a permit in the fishery. But as to skipper participation in 1983, the hearing officer found that Cleaver failed to prove that he was entitled to skipper participation points based on extraordinary circumstances because he abandoned his intent to participate, because his loss of financial ability to continue in the fishery did not constitute an extraordinary circumstance, and because he failed to demonstrate that he made all reasonably possible efforts to participate in the

---

**7.** AS 16.43.210(a); 20 AAC 05.415(a).

**8.** "Longlining" uses baited hooks on offshoots (gangions or leaders) of a single main line (usually several miles long) to catch fish. "Trolling" is towing individual fishing lines behind a moving boat.

**9.** Sablefish are also known as black cod.

**10.** Cleaver made his claims under 20 AAC 05.705.

467

fishery. The commission adopted the hearing officer's decision as a final decision after sixty days.

Cleaver filed a petition for administrative review, a request to accept a late-filed petition, and a request for an interim permit. The commission declined to accept Cleaver's late petition to reopen his application because he "failed to demonstrate due diligence from the time of his actual notice of the hearing officer and final commission decisions" and because his "underlying substantive claim fail[ed] to present a genuine issue that would warrant further administrative proceedings." The commission also denied Cleaver an interim use permit.[11]

Cleaver appealed to the superior court. Superior Court Judge Patricia A. Collins affirmed the commission's decision and awarded attorney's fees of $3,039 to the state, which was twenty percent of the 101.3 hours spent on the appeal at a market rate of $150 per hour. Cleaver now appeals both the denial of his petition to review his application and the award of attorney's fees to this court.

## III. STANDARDS OF REVIEW

■ In administrative appeals, we directly review the agency action in question.[12] We review the commission's factual findings under the substantial evidence standard.[13] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [14] We apply a deferential "reasonable basis" standard of review to an agency's interpretation of its own regulations.[15] Our review of the commission's application of the law to the facts is limited to whether the decision was arbitrary, unreasonable, or an abuse of discretion.[16]

■ We review a superior court's award of attorney's fees for abuse of discretion.[17]

## IV. DISCUSSION

### A. The Commission Did Not Err by Refusing To Give Cleaver Skipper Participation Points for 1983 Based on Extraordinary Circumstances.

■ Cleaver argues that his difficulties longlining during the 1983 sablefish season met the criteria for extraordinary circumstances and that the commission erred in refusing to award him skipper participation points for that year.

Title 20 AAC 05.705(a)(1) sets out the schedule for skipper participation points for 1982–84.[18] To be eligible for the points for a certain year, the regulation requires the ap-

---

11. Although the commission's decision denied Cleaver's request for a 1999 interim use permit, Cleaver's appeals to the superior court and this court have resulted in issuance of interim use permits to him by the commission under the requirement of *Kalmakoff v. State, Commercial Fisheries Entry Comm'n*, 697 P.2d 650, 652 (Alaska 1985).

12. *Northern Alaska Envtl. Ctr. v. State, Dep't of Natural Res.*, 2 P.3d 629, 633 (Alaska 2000).

13. *Jones v. Commercial Fisheries Entry Comm'n*, 649 P.2d 247, 249 n. 4 (Alaska 1982).

14. *Commercial Fisheries Entry Comm'n, State v. Baxter*, 806 P.2d 1373, 1374 (Alaska 1991) (quoting *Keiner v. City of Anchorage*, 378 P.2d 406, 411 (Alaska 1963)).

15. *Bartlett v. State, Commercial Fisheries Entry Comm'n*, 948 P.2d 987, 990 (Alaska 1997).

16. *Rose v. Commercial Fisheries Entry Comm'n*, 647 P.2d 154, 161 (Alaska 1982) (citing *State,*

*Dep't of Admin. v. Bowers Office Prods., Inc.*, 621 P.2d 11, 13 (Alaska 1980)).

17. *Stosh's I/M v. Fairbanks N. Star Borough*, 12 P.3d 1180, 1183 (Alaska 2000).

18. 20 AAC 05.705(a)(1) provides:
(A) Skipper participation points may be claimed for a given season subject to the requirement that the applicant must have commercially harvested at least 2,000 pounds of sablefish in the fishery as a skipper. A rebuttable presumption exists that the applicant was a crewmember and not a skipper for that season if the applicant had only one day with landings in the fishery and the sablefish poundage from that day's landings represented less than 15 percent of the total sablefish poundage delivered from the vessel during that season in the fishery.
(B) An applicant may claim skipper participation points for the 1982–1984 seasons as shown in the following schedule:

| Season | Available Points |
| --- | --- |
| 1984 | 18 |
| 1983 | 17 |
| 1982 | 16 |

plicant to have commercially harvested at least 2,000 pounds of sablefish in the fishery as a skipper.[19] Cleaver harvested only 385 pounds of sablefish in 1983. Accordingly, he was not eligible to claim skipper participation points for 1983 under 20 AAC 05.705.

Under 20 AAC 05.703(d), however, an applicant may be awarded points he was otherwise ineligible to claim if extraordinary circumstances prevented his participation.[20] The hearing officer applied a three-part test to determine whether an applicant was entitled to participation points because of extraordinary circumstances: (1) whether the applicant had the specific intent to participate in the fishery, (2) whether he was prevented from doing so due to some extraordinary circumstances, and (3) whether, despite those circumstances, he made all reasonably possible efforts to participate in the fishery.

### 1. Specific intent

The hearing officer found that Cleaver once had the specific intent to participate in the fishery but abandoned that intent "after discovering that his set-up on the DEEP SEA was both inadequate and dangerous and concluding that he couldn't afford to make the necessary changes that year." The commission's decision to deny Cleaver's petition for reconsideration noted several portions of the hearing transcript where Cleaver indicated that he gave up his specific intent to participate that year. In one portion, Cleaver testified that:

> it had been my intention to fish ... in—in '83, I had had some friends that told me that was a good thing to do and I was—I wanted to do it, but I—I felt that I was going to—with the equipment that I had, I probably ran the risk of endangering other people's gear and my crew, hurting somebody and I didn't think it was safe or plausible to do it, so I chose not to.

**19.** 20 AAC 05.705(a)(1)(A).

**20.** 20 AAC 05.703(d) provides:

> If extraordinary circumstances prevented an applicant from participating in the fishery in a given season, the commission will, in its discretion, award the applicant those points the applicant could reasonably have claimed but

Later in the hearing, the hearing officer and Cleaver had this exchange:

> Hearing Officer: [Y]ou just called it a day then? .
>
> Mr. Cleaver: Yeah, I called it a season ... [.]
>
> Hearing Officer: Season.
>
> Mr. Cleaver: ... for the [sablefish].

In a third excerpt, Cleaver volunteers that he gave up:

> Hearing Officer: Okay. So this happened back in April? ·
>
> Mr. Cleaver: Right.
>
> Hearing Officer: You had your two days, you had this landing....
>
> Mr. Cleaver: And I gave it up at that point.

By his own testimony, Cleaver candidly admitted that he abandoned his intent to participate in 1983.

Furthermore, Cleaver made no attempt to participate in the two openings in the fishery later in the year during the periods of September 1–7 and October 10–14. During the first opening, Cleaver was trolling for salmon; during the second, he had already returned to Seattle for the season. Substantial evidence supports the hearing officer's finding that Cleaver abandoned his intent to participate.

### 2. Extraordinary circumstances

The commission's regulations give examples of what situations constitute extraordinary circumstances. "Extraordinary circumstances include ... the loss of vessel or equipment through sinking, destruction, or extensive mechanical breakdown.... Extraordinary circumstances do not include ...

> for the extraordinary circumstance. Extraordinary circumstances include temporary illness or disability, the loss of vessel or equipment through sinking, destruction, or extensive mechanical breakdown, and other similar objectively verifiable causes of non-participation. Extraordinary circumstances do not include, for example, voluntary or involuntary retirement from the fishery, permanent illness, per-

loss of the financial means to continue participation in the fishery." [21]

The commission interpreted the extraordinary circumstance of extensive mechanical breakdown to exclude the problems encountered by first-time participants in the fishery. The commission reasoned that Cleaver's "lack of financial resources to mechanically refit his vessel is a problem so common to first-time entrants that it does not qualify as an extraordinary circumstance.... [P]roblems faced by first-time entrants are far too common to be treated as extraordinary, unavoidable, or special circumstances."

The commission's interpretation is reasonable. The term "extraordinary" excludes the common. The term "mechanical breakdown" implies that the equipment worked at some point. Inability to properly use equipment and unsuitability of equipment are not generally considered to be "mechanical breakdowns." Thus, the commission's interpretation is reasonable under the regulation.

We have previously approved of the commission's similar interpretation of the term "unavoidable circumstances" in a parallel regulatory situation. In *Alaska Commercial Fisheries Entry Commission v. Russo,* [22] Russo argued that he was entitled to points under the "unavoidable circumstances" clause of 20 AAC 05.630(a)(5), [23] similar to Cleaver's claim for points under the "extraordinary circumstances" clause of 20 AAC 05.703(d). In *Russo,* we upheld the commission's interpretation limiting "unavoidable circumstances" to cases where fishers were "prevented from fishing by circumstances beyond their control." [24] Although the words "extraordinary" and "unavoidable" have slightly different meanings, both are used to describe problems of an extreme nature. Both regulations allow the commission the

discretion to award past participation points if extreme circumstances prevented the applicant's participation. Here, the difficulties Cleaver encountered during his first attempt to longline for sablefish were common to other first-time entrants and thus were not exceptional.

Cleaver's lack of experience and appropriate equipment do not constitute extraordinary circumstances, and neither does Cleaver's financial inability to resolve those problems. [25] The record demonstrates that Cleaver simply lacked the economic resources to participate in the fishery. The hearing officer found that Cleaver "lost the financial ability to continue in the fishery." At the hearing, Cleaver stated that "I didn't have the money to really set up properly for—for [sablefish]" and that "I had to make some major changes and to make those major changes during the season would have been—I—I just couldn't have done it. We were too financially strapped to get it accomplished in time for the 1983 ... season in the fall." However, while substantial evidence supports the hearing officer's finding that Cleaver could not participate in the fishery due to financial problems, the commission has consistently disallowed points for unavoidable circumstances when the problems were lack of money, equipment, or experience faced by a first-time entrant in the fishery. [26] Thus the commission's application of the law to the facts of this case is not arbitrary, but rather consistent and reasonable.

### 3. All reasonably possible efforts to participate

The hearing officer found that Cleaver did not make all reasonably possible efforts to participate because he did not seek a loan for the estimated $4,000 of modifications, equip-

manent disability, or loss of the financial means to continue participation in the fishery.

21. *Id.*

22. 833 P.2d 7 (Alaska 1992).

23. *Id.* at 8.

24. *Id.* at 9–10.

25. *E.g., In re Lundahl,* CFEC File No. 75–642 (July 17, 1991) ("The problems he encountered

(primarily, 'gearing up') were not unique to this applicant; rather, they are common among those entering a fishery for the first time."); *In re Anderson,* CFEC File No. 75–624 (May 7, 1982) ("Inability to obtain financing is not, by itself, an unavoidable circumstance.... [T]he costs and difficulties incurred in entering a fishery must be faced by all fishermen." (internal quotation marks omitted)); *In re Vick,* CFEC File No. 75–756 (October 27, 1982).

26. 20 AAC 05.703(d).

ment, and repairs he needed to enable him to safely longline for sablefish. Although Cleaver now presents evidence that he did ask one bank for a loan, he testified to the contrary at the hearing:

> Hearing Officer: I take it then, you didn't try to get the $4,000 loan from anybody in order to get—get the gear in shape to make the [indisc.].
>
> Mr. Cleaver: I was right up to my neck in loans. I couldn't—couldn't even think about it.

Even if Cleaver did make an attempt to get a loan, that single effort is not inconsistent with the hearing officer's finding. Substantial evidence supports the hearing officer's finding that Cleaver did not make all reasonably possible efforts to participate in 1983.

We uphold the commission's decision because the factual findings were supported by substantial evidence, the commission's interpretation of the term "extraordinary circumstances" was reasonable, and its application of that interpretation was not arbitrary.

### B. The Superior Court Did Not Abuse Its Discretion by Its Award of Attorney's Fees.

■ Cleaver argues that the superior court abused its discretion in awarding attorney's fees. The superior court awarded $3,039, which was twenty percent of $15,195, the state's total claimed attorney's fees. The state calculated its claim for attorney's fees by multiplying its attorneys' actual hours spent preparing the appeal, 101.3 hours, by a market rate of $150 per hour.

■ Alaska Rule of Appellate Procedure 508(e) [27] grants a superior court sitting as an intermediate court of appeal broad discretion

to award attorney's fees. [28] If the court finds that the appeal was frivolous or brought simply for the purposes of delay, full actual fees may be awarded. Otherwise, awards of attorney's fees under Alaska Appellate Rule 508(e) "should only partially compensate the prevailing party for attorney's fees." [29] The appellate court may exercise "its sound discretion and award a substantial sum as partial attorney's fees, if persuaded the amount of fees to be awarded is justified and reasonable." [30] A superior court may also look to Alaska Rule of Civil Procedure 82(b)(2) as a guideline for a reasonable award of attorney's fees. [31]

We discern no abuse of discretion in the superior court's award of attorney's fees. The state prevailed on all appealed issues. Because the superior court did not make an express finding that the appeal was frivolous, full attorney's fees are not permitted. But even if the superior court had substituted the state's 1997 billing rate, $94.72 for its internal clients, as suggested by Cleaver, the award of $3,039 is only about thirty percent of the state's attorney's fees. Given this partial award of attorney's fees, the superior court's broad discretion under Appellate Rule 508(e), the weakness of Cleaver's substantive claims, and the remaining facts and circumstances of this case, the superior court's award was not an abuse of discretion.

## V.  CONCLUSION

Because the commission did not err in refusing to give Cleaver skipper participation points and because the superior court's award of attorney's fees was not an abuse of discretion, we AFFIRM the commission's de-

27.  Alaska R.App. P. 508(e) provides:
>   Attorney's fees may be allowed in an amount to be determined by the court. If such an allowance is made, the clerk shall issue an appropriate order awarding fees at the same time that an opinion or an order under Rule 214 is filed. If the court determines that an appeal or cross-appeal is frivolous or that it has been brought simply for purposes of delay, actual attorney's fees may be awarded to the appellee or cross-appellee.

28.  *Municipality of Anchorage, Police & Fire Ret. Bd. v. Coffey*, 893 P.2d 722, 731 (Alaska 1995).

29.  *State Pub. Employees Ret. Bd. v. Cacioppo*, 813 P.2d 679, 685 (Alaska 1991) (quoting *Kenai Peninsula Borough v. Cook Inlet Region, Inc.*, 807 P.2d 487, 501 (Alaska 1991)).

30.  *Id.; see also Stalnaker v. Williams*, 960 P.2d 590, 598 (Alaska 1998) (affirming award of eighty-six percent of actual fees).

31.  *See Carr–Gottstein Props. v. State*, 899 P.2d 136, 148 (Alaska 1995).

nial of a limited entry permit and the superior court's award of attorney's fees.