Norval H. NELSON, Sr., Appellant,

v.

STATE of Alaska, COMMERCIAL FISHERIES ENTRY COMMISSION, Appellee.

Norval E. Nelson, Jr., Appellant,

v.

State of Alaska, Commercial Fisheries Entry Commission, Appellee.

Nos. S–12563, S–12564.

Supreme Court of Alaska.

July 3, 2008.

---

Michael Hough, Homer, for Appellants.

John T. Baker, Assistant Attorney General, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

The Alaska Commercial Fisheries Entry Commission (CFEC) issues entry permits and interim-use permits for commercial fishing purposes.[1] Both types of permits are

---

1. AS 16.43.020, .100(a)(7)-(8), .140. The Limited Fisheries Entry Act, AS 16.43.010–.990, established the CFEC and charged it with, among other things, "regulat[ing] entry into the commercial fisheries for all fishery resources in the state." AS 16.43.020, .100(a)(1).

renewable annually.[2] The CFEC designates distressed and certain other fisheries for limited entry and caps the number of entry permits it issues for these fisheries.[3] A point system determines who receives entry permits for these fisheries; points are available for economic dependence on and past participation in a given fishery.[4] The CFEC has authority to issue an interim-use permit while an entry permit application is pending or being appealed.[5]

In 1987 father and son fishers applied separately for entry permits in a sablefish fishery the CFEC had designated for limited entry.[6] The CFEC denied both applications for insufficient points. The father and son argue, as they have throughout their proceedings, that they each should be awarded additional points for two reasons: (1) the CFEC should be estopped from denying each of them additional "skipper points" because its misinformation caused both of them not to qualify for those points; and (2) they each qualify for additional skipper points under a regulatory "extraordinary circumstances" exception.[7] We affirm the denials of the extra points, and therefore the denials of the entry permits, because the CFEC did not err in concluding that the father and son were not misinformed and that neither qualified for additional points for "extraordinary circumstances."

## II. FACTS AND PROCEEDINGS

Norval H. Nelson, Sr. (Nelson Sr.) and his son, Norval E. Nelson, Jr. (Nelson Jr.) have been full-time commercial fishers for many years. They fish together, just as Nelson Sr. fished with his father, and they have landed crab, sablefish, and halibut.

By early 1987 the CFEC had determined that the Northern Southeast Inside sablefish longline fishery (sablefish fishery) could sustain only seventy-three commercial fishers.[8] In November 1987 Nelson Sr. and Nelson Jr. each applied to the CFEC for a sablefish fishery entry permit. Each claimed a total of 44.5 points: 9 points for 1975 skipper participation, 18 points for 1984 skipper participation, 10 points for income dependence, and 7.5 points for vessel ownership. In 1989 the CFEC classified Nelson Sr. with 0 points and Nelson Jr. with 40.5 points, and did not grant either application due to insufficient points.

The Nelsons requested administrative hearings and each amended his application to include an additional 11 points for skipper participation in 1977, for a projected total of 55.5 points each. A joint hearing on their applications was held in 1992, and the Nelsons raised two arguments now before us in this appeal. First, the Nelsons asserted that CFEC relayed misinformation that ultimately resulted in the CFEC denying Nelson Sr. skipper points for 1984 and Nelson Jr. skipper points for 1975 and 1977. Specifically, the Nelsons alleged that a CFEC staff person erroneously told Nelson Sr. that each boat could have only one interim-use permit at a time. The Nelsons claimed that as a result of this alleged misinformation, Nelson Sr. did not secure an interim-use permit in 1984 because Nelson Jr. had one for that year, and Nelson Jr. did not secure an interim-use permit in 1975 or 1977 because Nelson Sr. had one for each of those years. Neither Nelson was entitled to skipper points for the years he did not have an interim-use permit but each argued that he nonetheless should receive those points under an estoppel theory. Second, the Nelsons asserted that a mechanical breakdown in 1977 precluded them from participating in the sablefish fishery, which constituted extraordinary circum-

---

2. 20 Alaska Administrative Code (AAC) 05.425(a), .560(a) (2007).

3. 20 AAC 05.300–.320, .515.

4. AS 16.43.250; 20 AAC 05.600(a).

5. 20 AAC 05.415.

6. 20 AAC 05.310(f).

7. 20 AAC 05.703(d).

8. *Cleaver v. State, Commercial Fisheries Entry Comm'n*, 48 P.3d 464, 465 (Alaska 2002). "Northern Southeast Inside" refers to an administrative area described in the regulations. 20 AAC 05.230(a)(8). Sablefish are also referred to as black cod. *Cleaver*, 48 P.3d at 466 n. 9. "Longlining" involves using "baited hooks on offshoots ... of a single main line (usually several miles long) to catch fish." *Id.* at 466 n. 8.

stances entitling each of them to skipper points for that year.

In January 1997 a CFEC hearing officer issued a consolidated decision classifying Nelson Sr. with 17.5 points and Nelson Jr. with 43.5 points, still insufficient to qualify either Nelson for a permit. The Nelsons petitioned for administrative review in April 1997, and in August 2002 the CFEC affirmed the hearing officer's decision. The Nelsons petitioned for reconsideration, and in June 2003 the CFEC again affirmed the hearing officer's decision. The Nelsons then appealed to the superior court.

In December 2006 Superior Court Judge Michael L. Wolverton affirmed the decisions of the hearing officer and the CFEC. The superior court noted that the hearing officer's factual findings about the misinformation claim "were supported by substantial evidence" and that the hearing officer's conclusion about the lack of extraordinary circumstances "was supported by the facts in the record and [had] a reasonable basis in law."

The Nelsons appeal individually. This opinion addresses both appeals.

## III. STANDARD OF REVIEW

■ When a superior court acts as an intermediate court of appeal, we independently review the merits of the underlying administrative decision and give no deference to the superior court's decision.[9] We have recognized at least four principal standards of review for administrative decisions,[10] two of which are applicable here: "substantial evidence" for questions of fact and "reasonable basis" for questions of law that involve agency expertise.[11] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12]

## IV. DISCUSSION

We affirm the CFEC decision. Substantial evidence supports the CFEC's conclusion that the Nelsons were not misinformed. The CFEC also had a reasonable basis for its conclusion that the Nelsons' mechanical troubles did not constitute extraordinary circumstances.[13]

### A. The CFEC Decision Rejecting the Nelsons' Misinformation Claim Is Supported by Substantial Evidence.

■ Successful estoppel claims against the government must satisfy four elements: (1) a governmental body asserts a position; (2) a person reasonably relies on that assertion; (3) the person suffers prejudice as a result; and (4) estoppel serves the interest of justice.[14] The hearing officer and the CFEC concluded that the Nelsons had failed to prove that an erroneous statement had been made.

■ The hearing officer found that the Nelsons' "testimony about the alleged misinformation was confused, contradictory, and thus, not credible." The hearing officer identified discrepancies in the Nelsons' position: first, Nelson Sr. contradicted himself regarding when the alleged statement was made;

9. *Simpson v. State, Commercial Fisheries Entry Comm'n,* 101 P.3d 605, 609 (Alaska 2004) (citing *Bruner v. Petersen,* 944 P.2d 43, 47 n. 5 (Alaska 1997)).

10. *Id.* (citing *Jager v. State,* 537 P.2d 1100, 1107 n. 23 (Alaska 1975)).

11. *Id.*

12. *Cleaver,* 48 P.3d at 467 (citing *Commercial Fisheries Entry Comm'n, State v. Baxter,* 806 P.2d 1373, 1374 (Alaska 1991)).

13. The State also argues that Nelson Sr.'s appeal is moot. According to the State, even if the CFEC had classified Nelson Sr. with all of the points he seeks through his appeal, he still would not qualify for a permit because the denial level as of October 9, 2007, was higher than Nelson Sr.'s projected point total. The State cites *O'Callaghan v. State,* 920 P.2d 1387 (Alaska 1996), in support of the proposition that an appeal is moot if an appellant who prevailed would not be entitled to relief. *Id.* at 1388. In *O'Callaghan,* we concluded that the appeal of an unsuccessful gubernatorial candidate was moot because the term of office of the successful candidate had already ended. *Id.* at 1388–89. The State may be correct, but because we still must address Nelson Jr.'s claims, which mirror Nelson Sr.'s claims, we resolve the claims on their merits.

14. *Wassink v. Hawkins,* 763 P.2d 971, 975 (Alaska 1988) (citing *Municipality of Anchorage v. Schneider,* 685 P.2d 94, 97 (Alaska 1984)).

second, the Nelsons contradicted themselves regarding whether they believed they only *needed* one permit or whether they only *could have* one permit; and third, the Nelsons had on several other occasions held duplicate permits. The hearing officer noted that the only evidence of alleged misinformation was the Nelsons' self-interested testimony, which, in the case of Nelson Jr., was based not on personal knowledge but rather on what his father had told him. The hearing officer concluded that by neither asking the staff person to testify nor introducing evidence of other fishers being wrongly advised on this issue, the Nelsons failed to establish that they had been misinformed.

In our view, substantial evidence supports the hearing officer's and the CFEC's conclusions that the staff person did not misinform the Nelsons. We thus uphold the CFEC's decision not to award either Nelson additional skipper points based on estoppel.

### B. The CFEC Decision Rejecting the Nelsons' "Extraordinary Circumstances" Claim Has a Reasonable Basis.

█ The CFEC may award applicants points they reasonably would have been entitled to receive but for "extraordinary circumstances."[15] Extraordinary circumstances do not include "voluntary or involuntary retirement from" a fishery or "loss of the financial means to continue participation in" a fishery.[16] Extraordinary circumstances do include "the loss of vessel or equipment through sinking, destruction, or extensive mechanical breakdown."[17] Mechanical breakdown "implies that the equipment worked at some point. Inability to properly use equipment and unsuitability of equipment are not generally considered to be 'mechanical breakdowns.' "[18]

The hearing officer and the CFEC rejected the Nelsons' extraordinary circumstances claim, concluding that inappropriate gear, not gear failure, ultimately caused the Nelsons'

inability to participate in the sablefish fishery in 1977. The hearing officer acknowledged that the Nelsons experienced mechanical problems that year, but, because the sablefish fishery season was two and a half months long, found it was "[m]ore than likely" that they "had ample time to have a gear failure and still get back to fishing after a repair." The hearing officer found that if the Nelsons had been prevented from participating in the sablefish fishery, it was because they were "using a crab block instead of a longline gurdy" and that "[a]cquiring the necessary equipment is a common experience for fishers and is not unique or extraordinary." The hearing officer also noted that their vessel was "run down," that "any boat share money beyond the loan payment went into repairing and equipping the vessel," and that the Nelsons did not participate in the sablefish fishery with that vessel again until 1984.

In our view, the CFEC had a reasonable basis for its interpretation and application of the regulations to reject the Nelsons' "extraordinary circumstances" claim. It is unfortunate if financial considerations precluded the Nelsons from participation in the sablefish fishery, but the regulations explicitly state that "loss of the financial means to continue participation in" a fishery does not constitute extraordinary circumstances.[19] We thus uphold the CFEC's decision declining to award the Nelsons additional points based on this claim.

## V. CONCLUSION

Because the CFEC did not err in declining to give the Nelsons additional points, we AFFIRM the denials of their limited entry permits.

---

**15.** 20 AAC 05.703(d).

**16.** *Id.*

**17.** *Id.*

**18.** *Cleaver,* 48 P.3d at 469.

**19.** 20 AAC 05.703(d).