**Jim L. WIDMYER, Appellant,**

v.

**STATE of Alaska, COMMERCIAL FISHERIES ENTRY COMMISSION, Appellee.**

**Nos. S–14009, S–14010.**

Supreme Court of Alaska.

Dec. 9, 2011.

Rehearing Denied Feb. 13, 2012.

**101.** *See id.; Thomann v. Fouse,* 93 P.3d 1048, 1050 (Alaska 2004) (stating Rule 68 offer of judgment "must be definite").

Bruce B. Weyhrauch, Law Office of Bruce B. Weyhrauch, Juneau, for Appellant.

Thomas Lenhart, Assistant Attorney General, and John J. Burns, Attorney General, Juneau, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Jim Widmyer, a commercial fisher, applied for a permit to fish for sablefish. The State distributes these permits largely on the basis of past participation in the sablefish fishery, specifically participation between 1975 and 1984. An applicant is deemed to have participated in a given year if the applicant landed 2,000 pounds of sablefish that year or if the applicant would have landed sablefish if not for "extraordinary circumstances." Widmyer, though he had been unable to land many fish between 1975 and 1984, argued that he qualified for participation due to extraordinary circumstances. The Commercial Fisheries Entry Commission and the superior court both determined that Widmyer did not qualify for participation due to extraordinary circumstances. We affirm.

## II. FACTS AND PROCEEDINGS

### A. Application And Initial Rejection

In 1973 the Alaska Legislature passed the Limited Entry Act.[1] This act established the Commercial Fisheries Entry Commission and gave it the power to restrict entry into

---

1. Ch. 79, § 1, SLA 1973; AS 16.43.010–.990 (2010).

state fisheries.[2] In 1985 the CFEC restricted entry in the Northern and Southern Southeast Inside sablefish longline fisheries (hereafter the Northern and Southern fisheries), deciding that only 73 vessels per year would be permitted to harvest the Northern fishery and only 18 permitted to harvest the Southern fishery.[3] The CFEC adopted a point system to allocate these entry permits.[4] An applicant could claim points on the basis of either "past participation" in the fishery or on the basis of "economic dependence" on the fishery.[5]

Jim Widmyer applied for entry permits in both the Northern and Southern fisheries on December 30, 1987. He claimed to have participated in the fisheries in 1977, 1978, 1979, 1982, and 1983. He also claimed points based on economic dependence.

CFEC regulations provide that an applicant can claim participation points for a given year if the applicant harvested at least 2,000 pounds of fish that year.[6] If the applicant is unable to meet this standard, the applicant may nonetheless be able to receive participation points "[i]f extraordinary circumstances prevented an applicant from participating in the fishery in a given season."[7] CFEC regulations provide that "[e]xtraordinary circumstances include temporary illness or disability, the loss of vessel or equipment through sinking, destruction, or extensive mechanical breakdown, and other similar objectively verifiable causes of non-participation."[8]

Widmyer claimed extraordinary circumstances in the Southern fishery for 1977, 1978, 1979, and 1983, only claiming that he actually landed a catch in 1982. In the Northern fishery, Widmyer had no fish landings, but he claimed extraordinary circumstances for the same years (1977, 1978, 1979, and 1983). Widmyer acknowledged in his application that he did "not have much of a

chance" under the points system, but he sought points "on medical and hardship reasons."

The CFEC sent Widmyer a letter on January 7, 1988 requesting that Widmyer sign a tax waiver allowing the CFEC to access Widmyer's tax returns. This letter was sent by certified mail and was returned unaccepted. Widmyer, in a later hearing, stated that he did not, as a matter of principle, accept certified mail.

On February 24, 1988, the CFEC sent Widmyer a letter stating that since it had no record of Widmyer fishing the Northern fishery, his application for that fishery was denied. This letter was sent by certified mail and was returned unaccepted. Widmyer called the CFEC on May 11, 1988 and during the call was informed that his application had been denied.

In May 1988 Widmyer retained attorney Brad Brinkman to handle his applications. On May 27, 1988, Brinkman sent the CFEC a letter requesting copies of Widmyer's "permit files." On September 9, 1988, the CFEC replied, again requesting a tax waiver from Widmyer as well as "affidavits, medical records, and any other relevant documents explaining the reason [he] could not participate in this fishery from 1977–1979 and 1983." This letter was sent by certified mail and was again returned unaccepted. The CFEC re-sent the letter on October 3, 1988.

On June 13, 1988, Brinkman sent a letter requesting a hearing on Widmyer's application for the Northern fishery. On June 15, 1988, hearing officer Jesse Walters replied, granting the request for a hearing on Widmyer's Northern fishery application.

On April 17, 1989, the CFEC awarded Widmyer 16 of the 73 points he had claimed in his application for the Southern fishery, awarding him participation points for 1982,

**2.** *Cleaver v. State, CFEC*, 48 P.3d 464, 465 (Alaska 2002).

**3.** 20 Alaska Administrative Code (AAC) 05.310(c)(1), (2) (2011); 20 AAC 05.320(e); *Simpson v. State, CFEC*, 101 P.3d 605, 607–08 (Alaska 2004).

**4.** 20 AAC 05.701; 20 AAC 05.711.

**5.** 20 AAC 05.701; 20 AAC 05.705.

**6.** 20 AAC 05.705(a)(1)(A), (2)(A)(ii).

**7.** 20 AAC 05.703(d).

**8.** *Id.*

the only year Widmyer had actually landed sablefish. The CFEC explained that if Widmyer disagreed with this assessment, he could request an administrative hearing.

## B. Administrative Hearing

Brinkman responded by letter on April 20, 1989, requesting an administrative hearing on Widmyer's Southern fishery application. Brinkman repeated Widmyer's arguments for participation points and economic dependence points and included a number of documents, mostly medical records, supporting Widmyer's claims. Brinkman also requested copies of Widmyer's "licensing records." The CFEC provided these on April 27, 1989.

On April 25, 1989, the CFEC notified Widmyer that his request for a hearing on his Southern fishery application had been granted. On September 28, 1989, hearing officer Walters sent Widmyer notice that a hearing, covering both his Northern and Southern applications, would be held on November 3, 1989 in Ketchikan. This notice was sent by certified mail to Widmyer and was returned unaccepted. On October 26, 1989, hearing officer Walters called Brinkman about the hearing. Brinkman indicated that he had been unable to get in touch with Widmyer, presumably because Widmyer was out fishing, and Brinkman was unsure whether Widmyer was aware of the hearing. On November 1, Brinkman sent the CFEC a letter indicating he had received a phone message from Widmyer requesting a later hearing.

The hearing nevertheless occurred on November 3, 1989, and Widmyer attended.[9] At the hearing, Widmyer claimed participation points for 1978, 1979, 1982, and 1983 due to extraordinary circumstances. Widmyer stated that in 1977 he had sustained an injury when he "got a ratfish spine under [his] kneecap" and could not participate in either the Northern or Southern fisheries. Widmyer claimed that in 1978 his boat's transmission had failed and that this prevented his participation in either the Northern or

Southern fisheries. Widmyer claimed that in 1979 he had landed 4,000 to 5,000 pounds of "mixed grey cod and black cod" in the Northern fishery but that they had spoiled before he could sell them. Widmyer claimed that in 1983 he could not participate because of a mechanic's faulty repair to his hydraulic system.

Over the next year following the hearing, Widmyer submitted several documents intended to substantiate his claims. On November 7, 1991, Widmyer called the CFEC to inquire about his applications, and he told the CFEC that he would "get the last of his evidence into the commission as soon as possible." On February 5, 1992, Widmyer sent a handwritten letter to the CFEC, providing contact information for individuals who might be able to verify his statements concerning 1978. Widmyer also stated that he had no further evidence to submit.

## C. Hearing Officer Decision

The CFEC took no action until September 18, 1997,[10] when a new hearing officer, Jonathon Sperber, was assigned to Widmyer's case following hearing officer Walters's retirement. Hearing officer Sperber sent a letter to Widmyer listing the documents in the record and confirming that Widmyer did not wish to add any new documents. In September, October, and November of 1997, hearing officer Sperber had several telephone conversations with Widmyer about the content of the record, and over this period several new items were added to the record, including the testimony of Widmyer's brother.

Hearing officer Sperber issued his written decisions for both the Northern and Southern fisheries on November 21, 1997. Hearing officer Sperber awarded Widmyer zero points for the Northern fishery. Regarding 1977, hearing officer Sperber held that Widmyer had failed to produce sufficient evidence to substantiate his claim that a ratfish spine injury prevented his participation in

---

**9.** Due to a conflict, Brinkman was unable to attend, and after the hearing, Brinkman sent a letter to the CFEC indicating that Widmyer wished to represent himself to save money and that Brinkman was withdrawing as counsel.

**10.** Widmyer applied for and received an interim use permit in 1988 to fish the Northern fishery pending the resolution of his application.

the fishery. For 1978, hearing officer Sperber ruled that Widmyer had "failed to produce convincing evidence that he did not participate in the 1978 fishery because of the transmission failure." Regarding 1979, hearing officer Sperber found that Widmyer had proven that he caught 4,000 to 5,000 pounds of sablefish and gray cod, but held that because Widmyer had not proven participation for 1982–84, his claim for 1979 need not be considered.[11] For 1983, hearing officer Sperber acknowledged that hydraulic failure could qualify as an extraordinary circumstance but concluded that Widmyer had deliberately failed to repair the hydraulics in order to preserve a breach of contract claim against the mechanic who negligently repaired the system. Because hearing officer Sperber concluded that Widmyer did not qualify for participation points in 1982–84, Widmyer was not eligible for economic dependence points.[12]

Hearing officer Sperber awarded Widmyer 31 points for the Southern fishery. Hearing officer Sperber found Widmyer to have landed 4,484 pounds of sablefish in 1982 and awarded him 16 points for that year. Hearing officer Sperber rejected Widmyer's claim for extraordinary circumstances in 1977, 1978, 1979, and 1983 for the same reasons that he rejected those claims in his ruling on the Northern fishery. Hearing officer Sperber also awarded Widmyer 15 points for economic dependence, for a total of 31 points.

### D. Administrative Appeal

Widmyer, then represented by attorney Bruce Weyhrauch, appealed the hearing officer's decision to the CFEC on March 23, 1998. Weyhrauch filed a brief arguing that Widmyer was entitled to participation and economic dependence points.

The CFEC did not resolve Widmyer's appeal until December 2006. In its decision on the Northern fishery, the CFEC awarded Widmyer zero points. The CFEC concluded that Widmyer had not established extraordinary circumstances for 1977, 1978, or 1983. The CFEC determined that, even if Widmyer may have demonstrated extraordinary circumstances for 1979, he could not be awarded participation points for that year since he had not participated in 1982–84.

In its decision on the Southern fishery, the CFEC affirmed hearing officer Sperber's award of 16 points for participation in 1982 but held that Widmyer was entitled to more points for economic dependence. The Limited Entry Act specifies that priority should be assigned to fishers on the basis of "past participation" and "economic dependence." [13] CFEC regulations provide that economic dependence points can be achieved in two ways: (1) investment in a fishing vessel and (2) dependence on the fishery for income.[14] Hearing officer Sperber had ruled that Widmyer was entitled to 15 points for economic dependence but no points for vessel investment. The CFEC decided to award Widmyer the full amount of vessel investment points. But the CFEC rejected Widmyer's extraordinary circumstances claims for 1977, 1978, 1979, and 1983. The CFEC thus awarded Widmyer 46 points for the Southern fishery.

### E. Petition For Reconsideration

Widmyer filed a petition for reconsideration on May 14, 2007. Widmyer attached several new affidavits and other documents and sought a new evidentiary hearing at which witnesses would testify. The CFEC declined to allow additions to the record and reaffirmed its decisions.

### F. Superior Court Decision

Widmyer appealed to the superior court. The superior court affirmed the CFEC, finding that Widmyer could not demonstrate ex-

---

11. In order to claim participation points for 1975–1981, an applicant must have also received participation points for at least one of the years 1982, 1983, or 1984. 20 AAC 05.705(b); 20 AAC 05.707(b).

12. Under CFEC regulations, an applicant must receive participation points for at least one of the years 1982, 1983, or 1984 in order to be eligible for economic dependence points. 20 AAC 05.705; 20 AAC 05.707.

13. AS 16.43.250.

14. 20 AAC 05.705(b); 20 AAC 05.707(b).

traordinary circumstances for 1977, 1978, 1979, or 1983. Widmyer appeals.

## III. STANDARD OF REVIEW

 The Limited Entry Act provides that "final administrative determinations by the [CFEC] are subject to judicial review as provided in AS 44.62.560–44.62.570."[15] Alaska Statute 44.62.560 and AS 44.62.570 are provisions of the Administrative Procedure Act governing judicial appeals from administrative adjudications. Alaska Statute 44.62.570 provides:

> Inquiry in an appeal extends to the following questions: (1) whether the agency has proceeded without, or in excess of jurisdiction; (2) whether there was a fair hearing; and (3) whether there was a prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.

In administrative appeals, we directly review the agency action in question.[16] We review the commission's factual findings under the substantial evidence standard.[17] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18] We apply a deferential "reasonable basis" standard of review to an agency's interpretation of its own regulations.[19]

## IV. DISCUSSION

### A. Waived Points On Appeal

 In his initial statement of points on appeal, Widmyer listed a challenge to the CFEC's determination to deny him participation points for 1984 in the Southern fishery and the CFEC's determination to deny

him participation points for 1982 and 1984 in the Northern fishery. But Widmyer's briefs do not discuss 1982 or 1984, focusing instead on the years 1977, 1978, 1979, and 1983. Thus, we address Widmyer's arguments relating to those years in this appeal.[20]

### B. Record Issues

Widmyer attempts to rely on evidence provided after the close of the record. When Widmyer filed his petition for reconsideration with the CFEC, he attached several new pieces of evidence, including affidavits of acquaintances. Widmyer attempts to rely on this evidence in his appeal to this court. The CFEC argues that the record was closed and Widmyer could not add new evidence with his petition.

Widmyer makes two arguments to justify his use of this evidence. First, he argues that the CFEC did in fact consider this evidence in its order on reconsideration. Therefore, according to Widmyer, this evidence is part of the administrative record and may be cited on appeal. Second, Widmyer argues that, if the CFEC did not consider this new evidence, the CFEC abused its discretion.

### 1. The CFEC did not consider the new evidence in Widmyer's petition for reconsideration.

Widmyer argues that the CFEC "did discuss that [new] evidence." But when the CFEC issued its order on reconsideration, it explicitly stated that its decision was based on the record as of December 4, 2006, the time of the original CFEC decision. The CFEC decision itself also stated that the CFEC declined to "accept the additional evidence offered as part of the Petition for Reconsideration." The CFEC also issued a "supplemental" decision explicitly stating

---

**15.** AS 16.43.120.

**16.** *Northern Alaska Envtl. Ctr. v. State, Dep't of Natural Res.*, 2 P.3d 629, 633 (Alaska 2000).

**17.** *Jones v. State, CFEC*, 649 P.2d 247, 249 n. 4 (Alaska 1982).

**18.** *State, CFEC v. Baxter*, 806 P.2d 1373, 1374 (Alaska 1991) (quoting *Keiner v. City of Anchorage*, 378 P.2d 406, 411 (Alaska 1963)).

**19.** *Bartlett v. State, CFEC*, 948 P.2d 987, 990 (Alaska 1997).

**20.** We have explained that an issue not discussed in the appellant's briefs is considered waived. *See Kellis v. Crites*, 20 P.3d 1112, 1115 (Alaska 2001).

that it was excluding Widmyer's fish tickets from after 1985.[21] In light of these statements, we conclude that the CFEC did not admit Widmyer's new evidence.

**2. The CFEC could permissibly decline to consider the new evidence submitted with Widmyer's petition for reconsideration.**

■ We next address the question whether, assuming that the CFEC did exclude the new evidence in Widmyer's petition for reconsideration, it abused its discretion in ignoring this new evidence. Widmyer argues that it would be an abuse of discretion for the CFEC to exclude this evidence. Widmyer argues that the new evidence was necessary because "the commission had misunderstood several important points."

The record establishes that Widmyer had ample opportunity to be heard. He was afforded a hearing and multiple opportunities for appeal. He had over twenty years to gather and present evidence. Widmyer also had adequate notice. Widmyer had many opportunities to present evidence, and he could not have reasonably expected to be able to present new evidence in his petition for reconsideration after so many earlier opportunities.

Further, the hearing provided to Widmyer by the CFEC comported with the Limited Entry Act. That act, which created the CFEC, included a provision governing regulations and hearing procedures.[22] The Limited Entry Act granted the CFEC the power to promulgate regulations "necessary or proper in the exercise of its powers," including regulations covering the procedures used in hearings.[23] The original version of the Limited Entry Act also provided that "[c]ommon law rules of evidence apply to investigations, hearings and proceedings before the commission, except when the commission determines that their application is not required in order to assure fair treatment of all parties."[24] In 1981, the phrase "common law rules of evidence" was changed to "Alaska Rules of Evidence."[25] The legislative history does not include a reason for this change.[26] In 1984, the Alaska Legislature added a new subsection to this provision, which provided that "[t]he commission shall adopt regulations to provide for the correction of administrative error."[27] The legislative history for this change does not specifically discuss the procedural rules that are appropriate when the commission reconsiders its own decisions.[28]

Taken as a whole, the Limited Entry Act, the subsequent amendments to it, and the legislative history of the Act and its amendments indicate that the commission has the power to regulate its own procedures.[29] Nothing in the statute requires (or prohibits) the acceptance of new evidence on the recon-

---

**21.** When a fisher sells a catch to a processor, the processor is required to generate a record of this sale known as a fish ticket. 5 AAC 39.130(c) ("The first purchaser of raw fish, a catcher-seller, and an individual or company that catches and processes or exports that individual's or company's own catch or has that catch processed or received by another individual or company, shall record each delivery on an ADF & G fish ticket. Fish tickets must be submitted to a local representative of the department within seven days after delivery. . . .").

**22.** AS 16.43.110.

**23.** AS 16.43.110(a), (b).

**24.** Ch. 79, § 1, SLA 1973.

**25.** Ch. 47, § 1, SLA 1981.

**26.** 1981 Senate Journal 38.

**27.** Ch. 145, § 6, SLA 1984.

**28.** 1983 House Journal 973 ("Section 3 of the bill instructs the commission to adopt regulations governing the correction of its administrative errors, as, for example, where an applicant has been mistakenly credited with points for vessel ownership when the applicant did not own a vessel. This section will not allow the commission to undo discretionary determinations made by previous members of the commission. Nor will it require the commission to reopen closed applications when a court determines that the commission has misinterpreted a statute or regulation.").

**29.** It should be noted that the Limited Entry Act expressly provides that the Administrative Procedure Act does "not apply to adjudicatory proceedings of the" CFEC except to the extent that an applicant has the right to appeal a CFEC determination to the superior court. AS 16.43.120(a).

sideration of a commission decision. Therefore, the CFEC's decision to exclude Widmyer's new evidence was permissible under the Limited Entry Act.

Finally, Widmyer's hearing was consistent with the administrative regulations governing the CFEC. 20 AAC 05.1850 is titled "Reconsideration." Subsection (b) provides, in part, that the CFEC "will grant reconsideration only if the commission determines that a question of law, fact, or discretion exists that might lead the commission to modify or reverse its final decision." [30] The regulation does not expressly address whether the CFEC is obligated to accept new evidence upon reconsideration. The regulation does state that on reconsideration the commission will consider factual questions, but the ability to examine questions of fact does not necessarily require the acceptance of new evidence.[31] We therefore conclude that it was not an abuse of discretion for CFEC to decline to consider the new evidence.

### C. Extraordinary Circumstances Claims

In *Cleaver v. State, CFEC,* a fisher sought "extraordinary circumstances" points, and the administrative hearing officer applied a three-part test to determine whether sufficient extraordinary circumstances existed:

(1) whether the applicant had the specific intent to participate in the fishery, (2) whether he was prevented from doing so due to some extraordinary circumstances, and (3) whether, despite those circum-

stances, he made all reasonably possible efforts to participate in the fishery.[32]

In *Cleaver,* we analyzed Cleaver's claim for extraordinary circumstances within this three-part analysis.[33] We have held that "the applicant bears the burden of establishing qualification for all claimed points." [34] We evaluate Widmyer's claims for each year under this three-part test.

### 1. 1977

#### a. Intent to participate

■ Widmyer argues that he did intend to fish for sablefish in 1977 and that he had recently installed gear appropriate to fish sablefish. We have previously held that installing gear suited to harvesting a particular fish is indicative of intent.[35] Widmyer also points to an affidavit by an acquaintance, Lorie Kolanko, who stated that Widmyer intended to fish sablefish in 1977.

The CFEC argues that Widmyer's statement of his own intent is not credible. The CFEC, in a point that applies to all of Widmyer's claims, notes that Widmyer has made numerous inconsistent statements over the course of the adjudication of his application. The CFEC also argues that the Kolanko affidavit is very vague as to dates or other specifics.

While Widmyer claimed to have acquired gear specifically for the purpose of harvesting sablefish, he has provided no evidence of this. The only evidence of his intent to fish in 1977 are his and Lorie Kolanko's statements. We have previously held that a trier of fact

30. 20 AAC 05.1850(b).

31. *Cf. Neal & Co. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.,* 895 P.2d 497, 506 (Alaska 1995) (concluding that where "[the movant] effectively moved the trial court to reconsider its ruling based upon evidence that was not before it at the time it rendered its decision [on summary judgment]," it was not an abuse of discretion for the trial court to deny the motion to reconsider because the movant "had ample opportunity to secure the affidavits and depositions that it deemed necessary to oppose the summary judgment motion" and "provided no explanation for the delay in presenting the evidence").

32. 48 P.3d 464, 468 (Alaska 2002).

33. *Id.* at 468–70.

34. *Lewis v. State, CFEC,* 892 P.2d 175, 183 (Alaska 1995); *see also* 20 AAC 05.520(a) ("Every applicant shall have the burden of establishing his qualifications for an entry permit. Specific evidence will be requested on the application form for that purpose. The commission may at any time require an applicant to submit additional evidence in affidavit or other form relating to his qualifications."); 20 AAC 05.1820(d) ("The applicant or other party shall bear the burden of proving by a preponderance of the evidence that a determination of the commission is erroneous.").

35. *Suydam v. State, CFEC,* 957 P.2d 318, 324–25 (Alaska 1998).

may permissibly disregard a fisher's testimony of the fisher's intent to fish since the "witness has an interest in the outcome of the case." [36]

#### b. Extraordinary circumstances

Widmyer argues that in 1977 an injury from a ratfish spine prevented him from fishing. Widmyer, Paul Peterson (a "fishing colleague"), and Lorie Kolanko all stated under oath that this injury prevented Widmyer from participating in either fishery. The CFEC argues that there is no medical evidence confirming the ratfish injury. The CFEC also argues that the Kolanko and Peterson affidavits are unspecific and do not establish that Widmyer's injury was sufficiently serious to be an "extraordinary circumstance."

CFEC regulations provide that extraordinary circumstances "include temporary illness or disability," a category that presumably would include an injury like Widmyer's.[37] However, Paul Peterson's affidavit stated that the ratfish injury left Widmyer "laid up for weeks," and Widmyer claims that he sustained the injury in September, two months before the Northern and Southern fisheries closed. The CFEC notes that Widmyer made a successful lingcod landing after his alleged September injury but before the close of the sablefish fisheries. Widmyer counters that he does not recall making this landing and that the fish ticket may be inaccurate. He also argues that it was a very small landing and it may have been incidental to his ferrying friends on a hunting trip. Nevertheless, there is sufficient evidence to support the CFEC's conclusion that, even if Widmyer was injured in September, he still had time to participate in the fishery later.[38]

#### c. Reasonable efforts

Widmyer argues that his physical impairment prevented any efforts to fish. The CFEC responds that, since Widmyer's injury occurred well before the close of the sablefish fisheries, Widmyer has not established that his failure to fish was reasonable. Based on the evidence discussed above, we conclude that the CFEC was justified in finding that Widmyer had not adequately demonstrated that he undertook reasonable efforts to participate.

### 2. 1978

#### a. Intent

■ Widmyer's argument that he intended to fish in 1978 is supported by his own testimony and Lorie Kolanko's affidavit. The CFEC argues that Widmyer's testimony and the Kolanko affidavit are not credible. The CFEC notes that Widmyer stated during his hearing that Kolanko was unlikely to remember the details of his fishing.[39]

#### b. Extraordinary circumstances

Widmyer argues that his boat's transmission failed in the fall of 1978 and that this failure constituted an extraordinary circumstance.[40] According to Widmyer, repairing the transmission was quite time-intensive and prevented him from fishing for sablefish. The CFEC notes that these transmission problems only lasted for six weeks at most, and that the sablefish fisheries were open both before and after the six-week period Widmyer experienced transmission problems.

We have previously determined that when an applicant had time to repair a mechanical problem and then return to fishing, the mechanical problem did not constitute an extraordinary circumstance. In *Nelson v.*

---

**36.** *State, CFEC v. Baxter,* 806 P.2d 1373, 1375 (Alaska 1991).

**37.** 20 AAC 05.703(d).

**38.** We have held in several cases that an event did not constitute an extraordinary circumstance where time remained for the fisher to recover from the event and still fish. *See, e.g., Nelson v. State,* 186 P.3d 582, 586 (Alaska 2008).

**39.** In a note to the CFEC, Widmyer wrote that "you may call Lorie Kolanko ... although she remembers nothing."

**40.** In his appellant's brief, Widmyer states that his mechanical breakdown was in the fall of 1978, but he had earlier stated the breakdown occurred in the spring.

*State, CFEC,* we affirmed the CFEC's determination that mechanical problems had not constituted extraordinary circumstances in part because "the sablefish fishery season was two and a half months long" and "it was more than likely that [the applicant] had ample time to have a gear failure and still get back to fishing after a repair."[41]

#### c. Reasonable efforts

Widmyer argues that it was reasonable for him not to fish while his boat lacked a functioning transmission. The CFEC notes that there is no documentation of Widmyer's transmission repairs and that Widmyer still had time to fish after the transmission had been repaired. We conclude that the CFEC was justified in finding that Widmyer did not prove that he undertook reasonable efforts to repair his transmission and resume fishing.

#### 3. 1979

▮▮▮ The CFEC acknowledges that Widmyer's 1979 catch of sablefish and gray cod did constitute participation in the Northern fishery but argues that Widmyer is not entitled to participation points for 1979 because he did not receive any participation points for 1982–84. Regarding the Southern fishery, the CFEC argues that Widmyer does not deserve "extraordinary circumstances" participation points for 1979.

#### a. Intent

Widmyer's testimony and the affidavit of Jerry Heisler (Widmyer's crewmember) support Widmyer's intent to fish the Southern fishery in 1979. The CFEC argues that only Widmyer's own testimony and post-record evidence support Widmyer's intent argument.

#### b. Extraordinary circumstances

Widmyer argues that, while he was able to land a large catch of sablefish and gray cod in the Northern fishery, severe weather prevented him from depositing that catch before

it spoiled. Widmyer claimed that the weather caused Jerry Heisler to quit upon docking in Ketchikan with the spoiled fish. Widmyer claims that the severe weather and his sudden lack of a crewmember constituted extraordinary circumstances that prevented him from fishing the Southern fishery. The affidavit of Lorie Kolanko states that there was unusually severe weather in the fall of 1979. Widmyer also includes contemporary newspaper accounts of severe weather.

The CFEC argues, correctly, that Widmyer's evidence on this issue was all submitted after the close of the record. The CFEC also notes that Widmyer's current argument that severe weather prevented his participation contradicted his earlier statement that the severe weather only lasted "2 to 3 days." The CFEC further points out that the newspaper accounts provided by Widmyer were published three weeks before the end of the Southern fishery season.

Even if Widmyer's new submissions in his petition for reconsideration are considered, we conclude that the CFEC was correct that Widmyer did not establish extraordinary circumstances. Widmyer testified that the vessel he owned at that time, the GULF KID, was incapable of handling the usual weather in the sablefish fishery. We have noted on several occasions that lack of appropriate equipment does not qualify as an extraordinary circumstance.[42]

#### c. Reasonable efforts

Widmyer argues that his non-participation in the Southern fishery was reasonable because of the severe weather and his lack of a sufficient crew. Regarding the weather, we conclude that the CFEC was correct in finding that even if the weather was severe enough to constitute an extraordinary circumstance, there was sufficient time after the weather had passed for Widmyer to participate. Widmyer landed in Ketchikan in September or October 1979, when Jerry Heisler quit. The Southern fishery closed on

---

**41.** 186 P.3d at 586 (internal quotations omitted).

**42.** *Pasternak v. State, CFEC,* 166 P.3d 904, 910 (Alaska 2007); *Johnson v. State, CFEC,* Mem. Op. & J. No. 1199, 2005 WL 182959, at *5 (Alaska,

Jan. 26, 2005); *Cleaver v. State, CFEC,* 48 P.3d 464, 469 (Alaska 2002) ("[L]ack of experience and appropriate equipment do not constitute extraordinary circumstances....").

November 15. It is not clear exactly how much time remained until closing, but it was at least two weeks and probably closer to a month. In his petition for reconsideration, Widmyer submitted several news articles documenting severe weather in Alaska. But these news items are dated several weeks before the end of the fishery. We have previously held that even if an extraordinary circumstance befalls a fisher, reasonable efforts to participate are required if the fishery remained open for a significant amount of time afterwards.[43]

As to Widmyer's lack of a crewmember, the CFEC argues that Widmyer has provided no evidence that his failure to find a new crewmember was reasonable. The CFEC notes that the affidavit of Jerry Heisler, the crewmember who quit, states that Widmyer should have been able to find someone else to go with him. In interpreting the reasonable efforts requirement, we have previously required applicants to prove that they actually undertook reasonable efforts.[44] In this context, that requirement obligates Widmyer to prove at a minimum that he had tried to hire a crewmember.

### 4. 1983

#### a. Intent to participate

■ Widmyer argues that he intended to fish in both the Northern and Southern fisheries in 1983. The CFEC argues that only Widmyer's own "self-serving" testimony supports his intent to fish. The CFEC reiterates its arguments about Widmyer's lack of credibility and notes that Widmyer never acquired a license in 1983 for sablefish.

#### b. Extraordinary circumstances

Widmyer argues that faulty repairs to his boat's hydraulic system prevented his participation in both the Northern and Southern

fisheries in 1983. Widmyer argues that he lacked the funds necessary to repair the hydraulic system until he successfully obtained a settlement for the faulty repair. The CFEC argues that Widmyer's statement that he was able to fix the system in two hours belies his claim that this problem prevented his fishing for sablefish. And the CFEC argues that to the extent Widmyer elected not to fix the hydraulic system in order to preserve his lawsuit against the mechanic, that was Widmyer's own choice. The CFEC maintains that Widmyer's argument about being unable to afford the repair was only made in his petition for reconsideration and was unsupported by any documentation.

We have repeatedly held that an economic choice by the applicant not to fish cannot qualify as an extraordinary circumstance.[45] Similarly, we have determined that the inability to pay for needed repairs does not qualify as an extraordinary circumstance.[46] Consequently, we conclude that the CFEC was correct in determining that Widmyer failed to establish extraordinary circumstances.

#### c. Reasonable efforts

Widmyer argues that he aggressively sought the money to make the necessary repairs to his hydraulic system. The CFEC maintains that Widmyer's argument about lack of funds is unsupported by any evidence and that Widmyer's election not to fix the hydraulic system was his own economic choice. As explained above, we have held that an economic choice not to fish will not qualify the applicant for extraordinary circumstances points. In *Cleaver v. State, CFEC*, we determined that an applicant's failure to seek a loan to pay for needed repairs meant that the applicant had not engaged in reasonable efforts.[47]

He could have quit his teaching job and entered the gill net fishery on the F/V LINDA MARNELL. Instead, he made his election to forego gill netting. While it may have been a sensible election, it was not the only one available to him.").

---

**43.** *See Nelson*, 186 P.3d at 586.

**44.** *See, e.g., Cleaver*, 48 P.3d at 469–70.

**45.** *See May v. State, CFEC*, 175 P.3d 1211, 1219 (Alaska 2007); *Johnson*, Mem. Op. & J. No. 1199, 2005 WL 182959, at *5; *see also Younker v. State, CFEC*, 598 P.2d 917, 923 (Alaska 1979) ("The circumstances surrounding [applicant's] failure to gill net in 1971 were not unavoidable.

**46.** *Cleaver*, 48 P.3d at 469.

**47.** *Id.* at 469–70.

### D. Economic Dependence Points

CFEC regulations provide that an applicant is eligible for economic dependence points if the applicant can prove participation (or extraordinary circumstances) in 1982, 1983, or 1984.[48] The CFEC found that Widmyer participated in the Southern fishery in 1982 and awarded him the full amount of economic dependence points. The CFEC found that Widmyer did not participate in the Northern fishery in 1982, 1983, or 1984, and the CFEC accordingly declined to reach the issue of whether Widmyer was entitled to economic dependence points in the Northern fishery. Widmyer argues that extraordinary circumstances prevented his participation in the Northern fishery in 1983. Widmyer maintains that if we find extraordinary circumstances to exist in 1983, this case must be remanded to the CFEC to consider whether Widmyer is entitled to economic dependence points in the Northern fishery. But because we affirm the CFEC's determination that Widmyer did not establish extraordinary circumstances for 1983, we need not reach this question.

### V. CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's decision upholding the CFEC determination in all respects.

---

48. 20 AAC 05.705(b); 20 AAC 05.707(b).